# GERMAN ALLIANCE INSURANCE COMPANY *v.* HOME WATER SUPPLY COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 19.  Argued April 26, 1912.—Decided December 2, 1912.

A municipality is not bound to furnish water for fire protection, and if it voluntarily undertakes to do so it does not subject itself to a greater liability.

While a diversity of opinion exists, a majority of the American courts hold that the taxpayer has no such direct interest in an agreement between the municipality and a corporation for supplying water as will allow him to sue either *ex contractu* for breach, or *ex delicto* for violation, of the public duty thereby assumed.

In this case *held* that a taxpayer has no claim against a water supply company for damages resulting from a failure of the company to perform the contract with the municipality.

One agreeing to perform a public service for a municipality is responsible for torts to third persons, but for omissions and breaches of contract he is responsible to the municipality alone.

A contract between a public service corporation and the municipality should not be unduly extended so as to introduce new parties and new rights and subject those contracting to suits by a multitude of

persons for damages for causes which could not in the nature of things have been in contemplation of the parties.

The conclusion that a property owner has no claim against a water supply company for failure to conform to the contract does not deprive him of any right, for had the municipality been guilty of the same acts no suit could be maintained.

In *Guardian Trust Co.* v. *Fisher*, 200 U. S. 57, the contract with the water company expressly provided for liability of the company to third parties, and the state court having held that, under the law of North Carolina, an action of this nature can be maintained, that question was not in issue in this court.

What is said in an opinion of this court must be limited to the facts and issues involved in the particular record under investigation.

*Guardian Trust Co.* v. *Fisher* did not overrule *National Bank* v. *Grand Lodge*, 98 U. S. 124, holding that a third person cannot sue for the breach of a contract to which he is a stranger unless in privity with the parties and is therein given a direct interest.

"THE Spartan Mills" owned a number of houses in Spartanburg, South Carolina. They were damaged by fire on March 25, 1907. The German Alliance Company, which had insured the buildings, paid $68,000, the amount of the loss, took from the mills an assignment "of all claims and demands against any person arising from or connected with the loss or damage," and brought suit, in the United States Court for the District of South Carolina, against the Home Water Supply Company, on the ground that the fire could easily have been extinguished and the damage prevented if the Water Company had complied with its contract and duty to furnish the inhabitants of the city with water for fire protection.

The complaint alleged that on February 14, 1900, the City Council adopted an ordinance, ratifying a contract, previously prepared, between the city and the Water Company, by which the latter was empowered, for a term of 33 years, to lay and maintain pipes in the streets and operate waterworks with which "to supply the city and its inhabitants with water suitable for fire, sanitary and domestic purposes." The city agreed to use the hydrants

for the extinguishment of fires and sprinkling purposes only; to make good any injury which might happen to them when used by its fire department; to pay rent for fire protection, for the term of ten years, at the rate of $40 per year for each hydrant, and, annually, to levy a tax sufficient to pay what should become due under the contract.

The company agreed to lay at least six miles of pipe, but on 60 days' notice from the city would lay additional pipes and install hydrants, not less than ten to the mile, for each of which the city was to pay $40 per year.

The company agreed to keep all hydrants supplied with water for fire protection, and to maintain a height of at least 70 feet of water in the standpipe. If any hydrant remained out of order for more than 24 hours, after notice, the company was to pay the city $7 per week while each hydrant was unfit for use.

It was further alleged that in 1905 and 1906 the city ordered the company to "put in certain hydrants with connecting pipes," "which order, if obeyed, would have carried water protection to within about 200 feet of the building which first caught fire on March 25, 1907, instead of 650 feet, which was the distance of the nearest hydrant to the said fire on said day; that in violation of its duty and obligation to adequately protect the property from fire, and in defiance of the order of council, the defendant failed to make such extensions, and as a direct result there was no plug near enough to furnish water to extinguish said fire—all due to the defendant's culpable and wilful negligence and disregard of duty and obligations to said city and its inhabitants."

Other breaches were charged, in laying 4-inch instead of 6-inch pipe; in neglecting to install the electric cut-off, and "in failing absolutely to furnish water with which to extinguish such fire and prevent its spreading to other houses."

The defendant made no question as to the right of the

Insurance Company to maintain the action if the Spartan Mills could have done so, but filed a general demurrer which was sustained July 14, 1908. That judgment was affirmed November 4, 1909, by the Circuit Court of Appeals, (174 Fed. Rep. 764), and the case was brought here by writ of certiorari.

*Mr. Hartwell Cabell,* with whom *Mr. Stanyarne Wilson* was on the brief, for petitioner:

The only question presented by the demurrer to the complaint is whether an action in tort will lie against a private water company whose negligence and willful disregard of its duties in supplying water has been the proximate cause of loss of plaintiff's property.

*Guardian Trust Co.* v. *Fisher,* 200 U. S. 57, sustained such a right against a water company by whose negligent performance of its duties private property had been destroyed; that decision was binding upon the lower Federal courts and the affirmance of the judgment of the Circuit Court dismissing the complaint, was in effect a refusal of the court below to follow the law as laid down by this court. In that case the judgment recited that the recovery was for a tortious injury and damage done by the negligence of the defendant. *Fisher* v. *Greensboro Water Supply Co.,* 128 No. Car. 375.

The previous cases in North Carolina allowing recoveries against private water companies under similar circumstances (*Gorrell* v. *Greensboro Water Supply Co.,* 124 No. Car. 328; *Jones* v. *Durham Water Co.,* 135 No. Car. 553) proceeded upon the theory of the right of the party aggrieved to recover in an action upon the contract with the municipality, holding that the contract had been entered into for the benefit of the inhabitants, and that therefore they were entitled to maintain an action thereon. There was therefore no "rule of property" in North Carolina arising out of numerous adjudications upon the con-

struction of § 1255, which Federal courts would feel inclined to follow.

Federal courts in construing state statutes have uniformly declared their independence of state decisions, where the questions involved were matters of a general nature; or the terms to be defined those of general use in jurisprudence. *Swift* v. *Tyson*, 16 Peters, 1; *B. & O. R. R.* v. *Baugh*, 149 U. S. 368; *Venice* v. *Murdock*, 92 U. S. 494, 501; *Pleasant Township* v. *Ætna Life Ins. Co.*, 138 U. S. 67; *Burgess* v. *Seligman*, 107 U. S. 20, 34.

This court has committed the Federal courts to the doctrine that a private water company, when it enters upon the performance of its contract with a municipality, incurs certain duties to the public, the breach of which, when attended by injury to private property, constitutes a tort, and that such injury is not *damnum absque injuria.* *Guardian Trust Co.* v. *Fisher, supra;* and see *Mugge* v. *Tampa Water Works Co.*, 42 So. Rep. 81; *Ancrum* v. *Camden Water, Light & Ice Co.*, 64 S. E. Rep. 151; *Knuth* v. *Butler Elect. Ry.*, 148 Fed. Rep. 73.

Private corporations who contract with municipalities to supply water for public and private use, enjoy, through the nature of their business, valuable franchises, rights and privileges. They are granted monopolies for long terms; they exercise the right of eminent domain, by virtue of which they use the public streets and highways, condemn private property, enter upon the premises of citizens, and possess other privileges of an extraordinary nature. In return and in consideration of a stipulated charge, they undertake to furnish water to the municipality and its inhabitants for fire protection and domestic purposes.

The English courts from early times have held that when an individual or a private corporation for valuable consideration has contracted to render services of a public nature, such individual or corporation by operation of law

becomes charged with a duty to the public and may be held liable for the negligent discharge of that duty to any member of the public who may be injured thereby. *The Mayor &c.* v. *Henley,* 3 B. & A. 77; *Paine* v. *Partridge,* 1 Shower, 255; *Mayor of Lynn* v. *Turner,* Cowp. 86; *Mersey Docks* v. *Gibbs,* 11 H. L. Cas. 686; *Robinson* v. *Chamberlain,* 34 N. Y. 389; *Fulton Fire Ins. Co.* v. *Baldwin,* 37 N. Y. 648; *Little* v. *Banks,* 85 N. Y. 258; *Lampert* v. *Laclede Gas Light Co.,* 14 Mo. App. 376; *Appleby* v. *The State,* 16 Vroom. (N. J.) 161.

The right of a private citizen to recover as for a tort against a water company whose failure to furnish adequate water for fire protection has caused damage, has been sustained in a number of cases. *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Kentucky, 340; *Griffin* v. *Goldsboro Water Co.,* 122 No. Car. 206; *Fisher* v. *Greensboro Water Supply Co.,* 128 No. Car. 375; *Mugge* v. *Tampa Water Works Co.* (Fla.), 42 So. Rep. 81.

The neglect or failure to do the things that should be done in order to perform the contract properly, is not nonfeasance, but misfeasance. *Gregor* v. *Cady,* 82 Maine, 131, 136; *Olmstead* v. *Morris Aqueduct,* 17 Vroom. 495, 501; *House* v. *Houston W. W. Co.,* 88 Texas, 233; *Wainwright* v. *Queens Co. Water Co.,* 78 Hun, 146; *Ukiah City* v. *Ukiah Water Co.,* 75 Pac. Rep. 773; *Howsman* v. *Trenton Water Co.,* 119 Missouri, 304, holding that the duty to furnish water at the hydrants was one owing to the general public in its collective capacity and not to individuals composing the general public are not supported in reason and are answered in *Planters' Oil Mill* v. *Monroe Waterworks & Light Co.* (1900), 52 La. Ann. 1243, p. 1250.

The question is, for whose benefit the water was brought to the hydrant to be used to extinguish fires, that of the city as such or of the individual property owner whose property lies within the protected zone?

*Ferris* v. *Carson Water Co.*, 16 Nevada, 44, can be distinguished, and see *Bonaparte* v. *Camden & Amboy R. R. Co.*, Baldwin C. C. (U. S.) 205, 223; *Kiernan* v. *Metropolitan Construction Co.*, 170 Massachusetts, 378; *Borough of Washington* v. *Washington Water Co.*, 4 Robbins (N. J.), 254; *Public Service Corp.* v. *American Lighting Co.*, 1 Robbins, 122, as to the rights of individuals and duties of public utilities corporations.

The immunity from suit enjoyed by a municipality which undertakes to furnish water for fire purposes does not inure to the benefit of a private water company with which it has contracted for such supply. The cases which hold otherwise, *Britton* v. *Green Bay Water Co.*, 81 Wisconsin, 48; *Nichol* v. *Huntington Water Co.*, 53 W. Va. 348; *Akron Water Works Co.* v. *Brownless*, 10 Ohio C. C. 620, are in error.

The individual property owner may be without a remedy against the city simply because the city in providing fire protection exercises the sovereign power of the State and hence cannot be sued, as held in *Springfield Ins. Co.* v. *Keeseville*, 148 N. Y. 46, but it does not follow that because a municipality is not liable to individuals, a private water company which undertakes to perform the same acts is also not liable. *Mills W. W. Co.* v. *Forrest*, 97 N. Y. 97.

The objection that unless water companies are protected from the consequences of their own faults capitalists would not readily seek investment in enterprises involving such incalculable hazards, and the general public would lose the benefits now derived from them should not prevail.

To permit a tort feasor to escape the result of his own acts or omissions merely because his disregard of the duties laid upon him by law has caused a loss to others, which, by reason of its magnitude it would ruin him to pay, is surely a strange doctrine.

*Mr. I. A. Phifer*, with whom *Mr. Ralph K. Carson* was on the brief, for respondent.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

In *Ancrum* v. *Camden Water Company*, 82 S. Car. 284, the Supreme Court of South Carolina, construing a contract much like the one here involved, held that a taxpayer could not maintain an action against a Water Company for damage due to its failure to furnish water as required by such an agreement with the city. The plaintiff, however, contends that although the present suit is for damage to property located in South Carolina, that decision is not of controlling authority, because it was rendered two years after this action was begun. Relying on *Burgess* v. *Seligman*, 107 U. S. 20, it insists that when the contract was made, February, 1900, there was no settled state law on the subject, and therefore the Federal courts must decide for themselves, as matter of general law, the much controverted question as to a water company's liability to a taxpayer for failure to furnish fire protection, according to the terms of its contract with the city.

The courts have almost uniformly held that municipalities are not bound to furnish water for fire protection. Such was the unquestioned rule when they relied, as some still do, on wells and cisterns as a source of supply; nor was there any increase of liability with the gradual increase of facilities—though, with the introduction of reservoirs, standpipes, pumping stations and steam engines, cities were frequently sued for damages resulting from an inadequate supply or insufficient pressure. But the city was under no legal obligation to furnish the water; and if it voluntarily undertook to do more than the law required, it did not thereby subject itself to a new or greater liability. It acted in a governmental capacity, and was

no more responsible for failure in that respect than it would have been for failure to furnish adequate police protection.

If the common law did not impose such duty upon a public corporation, neither did it require private companies to furnish fire protection to property reached by their pipes. And there could, of course, be no liability for the breach of a common law, statutory or charter duty which did not exist. It is argued, however, that even if, in the first instance, the law did not oblige the company to furnish property owners with water, such a duty arose out of the public service upon which the defendant entered. But if, where it did not otherwise exist, a public duty could arise out of a private bargain, liability would be based on the failure to do or to furnish what was reasonably necessary to discharge the duty imposed. The complaint proceeds on no such theory. It makes no allegation that the defendant failed to furnish a plant of reasonable capacity, or neglected to extend the pipes where they were reasonably required. Nor is it charged that what the company actually did was harmful in itself or likely to cause injury to others, so as to bring the case within the principle applicable to the sale of unwholesome provisions, or misbranded poisons which, in their intended use, would be injurious to purchasers from the original vendee. So that, notwithstanding numerous charges of culpable, wanton and malicious neglect of duty, this suit—whether regarded as *ex contractu* or *ex delicto*—is for breach of the provisions of the contract of February 14, 1900, which must, therefore, be the measure of plaintiff's right and of the defendant's liability.

Whether a right of action arises, out of such a contract, in favor of a taxpayer is a matter about which there has been much discussion and some conflict in decisions. Although for nearly a century it has been common for private corporations to supply cities with water under this

sort of agreement, we find no record of a suit like this prior to 1878, when the Supreme Court of Connecticut, in a brief decision (*Nickerson* v. *Hydraulic Co.*, 46 Connecticut, 24), held that the property owner was a stranger to the agreement with the municipality, and, therefore, could not maintain an action against the company for a breach of its contract with the city. Since that time similar suits, some in tort and some for a breach of the contract, have been brought in many other States. In view of the importance of the question, the subject has been examined and reëxamined, the contract subjected to the most critical analysis and many elaborate opinions have been rendered. They are cited in 3 Dillon Munic. Corp., § 1340, and in *Ancrum* v. *Water Co.*, 82 S. Car. 284.

From them it appears that the majority of American courts hold that the taxpayer has no direct interest in such agreements and, therefore, cannot sue *ex contractu.* Neither can he sue in tort, because, in the absence of a contract obligation to him, the water company owes him no duty for the breach of which he can maintain an action *ex delicto.* A different conclusion is reached by the Supreme Courts of three States, in cases cited and discussed in *Mugge* v. *Tampa Water Works*, 52 Florida, 371. They hold that such a contract is for the benefit of taxpayers, who may sue either for its breach, or for a violation of the public duty which was thereby assumed.

The plaintiff presses these decisions to their logical conclusion and sues,—not for negligence in operating the plant, but for breach of the contract of construction. The complaint charges that as a direct consequence of the refusal to lay the pipes, as provided by the contract, there was no plug near enough to extinguish the fire. The other allegations as to putting in 4-inch instead of 6-inch pipe and failing to install the electric cut-off are immaterial, except on the theory that if the property owner was, indeed, a beneficiary, it, after acceptance, would be en-

titled to all the rights of the original promisee, and if not otherwise injured, might at least recover nominal damages for any breach. By the same reasoning it, with the other members of the class, might release the company from liability already incurred, or even discharge it altogether from the duty of carrying out the agreement in the future. If this did not entirely substitute the taxpayer for the municipality, it would at least subject the promisor to liability to many, where it only had contracted with one. *Dow* v. *Clark,* 7 Gray, 198, 201.

In many jurisdictions a third person may now sue for the breach of a contract made for his benefit. The rule as to when this can be done varies in the different States. In some he must be the sole beneficiary. In others it must appear that one of the parties owed him a debt or duty, creating the privity, necessary to enable him to hold the promisor liable. Others make further conditions. But even where the right is most liberally granted it is recognized as an exception to the general principle, which proceeds on the legal and natural presumption, that a contract is only intended for the benefit of those who made it. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit. For, as said by this court, speaking of the right of bondholders to sue a third party who had made an agreement with the obligor to discharge the bonds, they "may have had an indirect interest in the performance of the undertakings, but that is a very different thing from the privity necessary to enable them to enforce the contract by suits in their own names." *Nat. Bk.* v. *Grand Lodge*, 98 U. S. 123, 124. *Hendrick* v. *Lindsay*, 93 U. S. 143, 149; *National Savings Bk.* v. *Ward*, 100 U. S. 195, 202, 205.

Here the city was under no obligation to furnish the manufacturing company with fire protection, and this

agreement was not made to pay a debt or discharge a duty to the Spartan Mills, but, like other municipal contracts, was made by Spartanburg in its corporate capacity, for its corporate advantage, and for the benefit of the inhabitants collectively. The interest which each taxpayer had therein was indirect—that incidental benefit only which every citizen has in the performance of every other contract made by and with the government under which he lives, but for the breach of which he has no private right of action.

He is interested in the faithful performance of contracts of service by policemen, firemen, and mail-contractors, as well as in holding to their warranties the vendors of fire engines. All of these employés, contractors, or vendors are paid out of taxes. But for the breaches of their contracts the citizen cannot sue—though he suffer loss because the carrier delayed in hauling the mail, or the policeman failed to walk his beat, or the fireman delayed in responding to an alarm, or the engine proved defective, resulting in his building being destroyed by fire. 1 Beven, Negligence in Law (3d ed.), 305; Pollock on Torts (8th ed.), 434, 547; *Davis* v. *Clinton*, 54 Iowa, 59, 61.

Each of these promisors of the city, like the Water Company here, would be liable for any tort done by him to third persons. But for acts of omission and breaches of contract, he would be responsible to the municipality alone. To hold to the contrary would unduly extend contract liability, would introduce new parties with new rights, and would subject those contracting with municipalities to suits by a multitude of persons for damages which were not, and, in the nature of things, could not have been, in contemplation of the parties.

The result is that plaintiff cannot maintain this action, and though based upon the general principle that the parties to a contract are those who are entitled to its rights,

is in accordance with the particular intent of those who
made this agreement.

If the company had, indeed, made a valid contract for
the benefit of a third person, the amount of the damages
for which it might be liable would be immaterial. Yet
where there is no such express agreement, and liability
to a taxpayer is sought to be raised by implication, it is
proper to test the correctness of the proposed construction
by noting the results to which it would lead. The con-
tract was made in February, 1900. By its terms the city
was, during a period of 10 years, to pay $40 per annum for
each hydrant. During that time the property subject to
damage by fire might double or quadruple in value. The
failure to provide that the water rent of $40 per hydrant
should rise or fall with the increase or decrease in such
values indicates that liability for damage to that property
was not in the contemplation of the parties and that no
payment therefor was included in the price for each hy-
drant. Otherwise the amount of payment would naturally
have varied with the risk assumed.

In some States it is held that, in the absence of a stat-
ute, a city can neither directly nor indirectly make a con-
tract with a water company that the latter should pay
private individuals for fire damage, since that would in-
volve the use of public money to secure a private benefit
to the owner of private property. *Hone* v. *Water Co.*, 104
Maine, 217. In *Ancrum* v. *Water Co.*, *supra*, the South
Carolina court held that the amount paid per hydrant
was so insignificant by comparison with the enormous
risk involved, as clearly to indicate that neither the city
nor the water company intended that the latter should
be liable to the taxpayer for a breach of the company's
contract with the city.

This conclusion deprives the property owner of no right,
for if the city had owned the works, and had been guilty of
the same acts as are charged against the water company

here, no suit could have been maintained against the municipality. There was no creation of a right to fire protection if, instead of doing so itself, the city contracted with a private company to furnish water. It bought the citizen no new right of action, and did not bargain to secure for him an indemnity against loss by fire, but left him to protect himself against that hazard by insurance, paying the premium direct to an insurance company instead of indirectly through taxation. When, in pursuance of such precaution, the Spartan Mills insured the houses, and the plaintiff later settled the fire loss, there was no right of action in favor of the manufacturing company against the Water Company to which the Insurance Company could be subrogated.

The plaintiff urges that, whatever the rule elsewhere, it is entitled to recover under the decision in *Guardian Trust Company* v. *Fisher*, 200 U. S. 57. But the facts there differ from those in this record. There the water company had an exclusive right, to use the streets in the city of Greensboro, under an ordinance which, among other things, provided that "said water company shall be responsible for all damage sustained by the city, or any individual or individuals, for any injury sustained from the negligence of the said company, either in the construction or operation of their plant." (p. 58.) Buildings were destroyed as a result of the negligent failure of the company to furnish sufficient water while operating its plant. The owner brought suit against the water company in the courts of North Carolina, where it had previously been settled that such actions could be maintained. He recovered a judgment "for the tortious injury and damage done to the plaintiff by the negligence of the defendant." 128 No. Car. 375; 115 Fed. Rep. 187. Execution issued, but no levy could be made, because the property of the water company was in possession of a receiver, appointed in foreclosure proceedings pending in the United States

court. The plaintiff intervened therein, claiming that he was entitled to be paid before the bondholders by virtue of the North Carolina statute, which provided that "judgments for corporate torts" should take priority over older mortgages.

It was urged, among other things, by the bondholders that the suit in the state court was really for breach of contract, and that entering the judgment as for a tort did not change the nature of the action so as to entitle the plaintiff to the benefits of the North Carolina statute.

It was that question alone, as to the character of the suit and judgment, which was before this court. What was said in the opinion must be limited, under well-known rules, to the facts and issues involved in the particular record under investigation. The *Fisher Case* could not have decided the primary question as to the right of the taxpayer to sue, for that issue had been finally settled by the state court. It raised no Federal question and was not in issue on the hearing in this court. Neither did the *Fisher Case* overrule the principle, announced in *National Bank* v. *Grand Lodge*, 98 U. S. 123, 124, that a third person cannot sue for the breach of a contract to which he is a stranger unless he is in privity with the parties and is therein given a direct interest. The judgment of the Circuit Court of Appeals is

*Affirmed.*