### ABRAVAYA, et al v. FLORIDA POWER & LIGHT CO. (No. 2)
No. 73-8510.

Circuit Court, Dade County.

September 26, 1973.

Lawrence D. Faye, Miami, for the plaintiffs.

Talbot D'Alemberte of McCarthy, Steel, Hector & Davis, Miami, for the defendant.

JOSEPH NESBITT, Circuit Judge.

On April 3, 1973, during an electrical power outage, an automobile driven by Richard Abravaya was involved in an intersection collision with another automobile. According to the allegations of the amended complaint, the traffic signals were not functioning at that intersection.

The plaintiffs filed suit against Florida Power & Light Company on behalf of themselves and other persons similarly situated, alleging that the negligence of the defendant resulted in injuries suffered by the plaintiff-driver and the class he purported to represent. In addition, the other plaintiff, the driver's father, brought suit for recovery of medical expenses, loss of his son's services and property damage to his vehicle, on behalf of himself and all other persons similarly situated.

The defendant filed a motion to dismiss the complaint for failure to state a cause of action for negligence and failure to state a cause for class action, also a motion to strike the class allegations of the complaint for legal insufficiency. A hearing was held, and a legal memorandum was filed by the plaintiffs. This court, after consideration, struck all allegations in the complaint which attempted to set forth a cause for class actions on the grounds that an automobile accident personal injury action, such as the one involved in the instant case, could not properly proceed as a class action. See Abravaya v. Florida Power & Light Co., 39 Fla. Supp. 66( Fla. Dade Co. Cir. Ct. 1973); Committee Note to Rule 23, *Proposed Amendments to Rules of Civil Procedure for the United States District Courts*, 39 F.R.D. 69, 103 (1966) (3B J. Moore, *Federal Practice* §23.01(10-.3) (2d ed. 1969)). In addition, the allegations contained in the complaint were found to have fallen far short of the minimum requisites for class actions as set forth in recent Florida cases. See Equitable Life Assurance Society v. Fuller, 275 So.2d 568 (Fla. 3d Dist. 1973); Watnick v. Florida Commercial Banks, Inc., 275 So.2d 278 (Fla. 3d Dist. 1973); Federated Department Stores, Inc. v. Pasco, 275 So.2d 46 (Fla. 3d Dist. 1973); and Harrell v. Hess Oil and Chemical Corporation, 272 So.2d 542 (Fla. 1st Dist. 1973).

Further, the entire complaint was dismissed for failure to state a cause of action for negligence because the plaintiffs failed to sufficiently allege ultimate facts demonstrating the existence of a duty, a breach of that duty, proximate cause for the injury to the plaintiff-driver, and damages. The plaintiffs were given leave to file an amended complaint for the negligence count only. In addition, this court's written order of dismissal specifically suggested areas which should be considered by the plaintiffs in filing an amended pleading, including allegations concerning the nature of the duty owed to the plaintiffs, the acts of negligence which breached the duty, whether the breach of such a duty was the proximate cause of injuries to the plaintiff, and several questions relating to damages.

In addition, this court suggested that the plaintiffs deal with the questions of whether the municipal owner and operator of the

traffic signals was a necessary or indispensable party to the action, whether or not the operator of the other vehicle involved in the collision was a necessary or indispensable party, and what relationship, if any, existed between the rules of the road and the circumstances of the accident. Abravaya v. Florida Power & Light Co., 39 Fla. Supp. 66 (Fla. Dade Co. Cir Ct. 1973).

An amended complaint was filed by the plaintiffs. Except for the class action allegations which were omitted, the amended complaint is substantially similar to the original complaint. The defendant filed a motion to dismiss the amended complaint, which was set down for hearing. The court has considered the motion, the memorandum of law previously submitted by the plaintiffs, and the argument of respective counsel. It is the determination of this court that the negligence count should now be dismissed with prejudice.

The central issue involved in this litigation is whether or not the defendant utility owed a duty to the plaintiff driver, who, admittedly, was not a customer of the defendant for purposes relevant to this case. While there are no cases in this jurisdiction dealing with the question of duty in this factual context, several courts in New York have dealt with similar facts.

In Nicholson v. City of New York, 271 App. Div. 899, 67 N.Y.S. 2d 156 (1946), aff'd, 297 N.Y. 548, 74 N.E. 2d 477 (1947), the court was reviewing a judgment in favor of a plaintiff who had suffered injuries when his automobile collided with a steel column supporting elevated train tracks. The plaintiff alleged that the defendant power compay, which had contracted with the city of New York to provide electric power for street lights, had been negligent in allowing the street lights in the vicinity of the collision to remain unlighted. But for the failure of the lights and subsequent darkness, plaintiff maintained the accident would not have occurred.

In reversing the lower court judgment, the court held that "under the circumstances disclosed, respondent [plaintiff below] had no right of action for a violation of a duty imposed upon appellant [the power company] by contract with the city of New York, or by virtue of a relationship resulting from that contract." *Id.* at 900, 67 N.Y.S. 2d at 157. The court continued —

> "Neither by its contract, nor by the servicing of the city's lighting system, had appellant obligated itself to perform on behalf of the public the duty which rested on the city, to maintain its streets in a reasonably safe condition, nor did it incur liability for a breach of that duty, if committed by the city, to the injury of one to whom appellant owed no im-

mediate obligation." *Id.* at 900, 67 N.Y.S. 2d at 158, referring to H. R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896, 62 A.L.R. 119 (1928).

In another New York case, Shubitz v. Consolidated Edison Company, 59 Misc. 2d 732, 301 N.Y.S. 2d 926 (Sup. Ct. 1969), Justice Cowin held that an electric utility company owed no duty to a tenant who was injured in an apartment house during a blackout. That judge reiterated the long-standing principle of tort law that "negligent conduct becomes actionable only when it violates some specific duty . . . (citations omitted). The failure to perform a contractual obligation is never a tort unless it is also a violation of a legal duty . . ." *Id.* at 735, 301 N.Y.S. 2d at 930. The court found that since there was no duty owing from the utility to the tenant-plaintiff, there could be no breach of duty, " 'and without breach of duty their can be no liability.' " *Id.,* citing Williams v. New York, 308 N.Y. 548, 557, 127 N.E. 2d 545, 550 (1955). In response to an argument presented that the utility could be liable if its conduct had " 'advanced to such a point as to have launched a force or instrument of harm,' " *(Id.* at 734, 301 N.Y.S. 2d at 929, quoting H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 168, 159 N.E. 896, 898 (1928)), an argument also offered to this court by the plaintiffs herein, that court noted that "[e]ven if the defendant be negligent in failing to deliver electrical current, the failure in such circumstance is a denial of a benefit, not the commission of a wrong." *Id.,* citing German Alliance Co. v. Home Water Supply Co., 226 U.S. 220 (1912), and Hone v. Presque Isle Water Co., 104 Me. 217, 71 A. 769 (1908).

The classic case which deals with the question of damages arising out of the failure of a public utility to provide service with respect to a non-customer is H. R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896 (1928). In that case, there had been a failure of water pressure in fire hydrants, and the plaintiff had suffered a total loss of his warehouse by fire because of a lack of water pressure. A contract existed between the city and the water company to provide water for the fire hydrant system. The breach of this contract, according to the plaintiff, occasioned his loss.

Three theories of action were put forth by the plaintiff — first, a cause of action for breach of contract; second, a cause of action for common law tort; and third, a cause of action for breach of statutory duty. Justice Cardozo, speaking for a unanimous panel, rejected liability on all three grounds. With respect to the contractual argument, the court held that no recovery could be had unless it could be shown that the utility intended to be answerable to individual members of the public as well as to the municipality it had contracted with.

"In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary . . . It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost." *Id.* at 164, 159 N.E. at 897.

The court concluded that — "[b]y the vast preponderance of authority, as contract between a city and a water company to furnish water at the city hydrants has in view a benefit to the public that is incidental rather than immediate, an assumption of duty to the city and not to its inhabitants." *Id.* a 165, 159 N.E. at 897.

The court likewise rejected a claim based upon common law tort. While noting that a duty could be gratuitously assumed, the court stated that such a duty could only arise "[i]f conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury . . ." *Id.* at 167, 159 N.E. at 898. Noting that "[t]he query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good . . ." *(Id.* at 168, 159 N.E. at 898), the court held that such wrongdoing could not be involved in the failure of the utility to supply water under the circumstances in the case, but rather "[t]he failure in such circumstances to furnish an adequate supply of water is at most the denial of a benefit. It is not the commission of a wrong." *Id.* at 169, 159 N.E. at 899.

Inspected also was the argument based upon breach of a statutory duty on the part of the utility. The court simply noted in passing that any duty arising under the statute was a duty owed to a customer, the one to whom service is due and denied at a given time and place — "The denial, though wrongful, is unavailing without more to give a cause of action to another." *Id.* at 169, 159 N.E. at 899.

The facts in this case present a situation which is fundamentally indistinguishable from *Shubitz, Nicholson,* and *Moch.* Neither plaintiff was a customer of the defendant. More importantly, the defendant had no duty to regulate the flow of traffic for the city of Miami, and there is no factual allegation which would indicate that any such duty was assumed. Moreover, as stated in *Shubitz* and *Moch,* the loss of electrical power was simply the deprivation of a

benefit and nothing more. It is clear that no duty existed between the defendant and the plaintiffs under any contract, common-law tort theory, or statute. There being no duty, as a matter of law, there can be no breach of duty.

In addition to the reasons cited in the above decisions, there is another rationale for this court's conclusion — tort law is largely concerned with the allocation of risks, and the determination of who should bear risks has far-reaching consequences. The plaintiffs in this case want a power company to bear risks for traffic accidents, in the event of signal failures. Their theory would impose a burden of liability for situations quite remote from the duties assumed in an ordinary contract situation. This would result in the burden for traffic accidents being shifted to the power company and, ultimately, to the rate payer through increased power rates. The court can see no reason to use this device for allocating risks for traffic accidents when the involvement of the power company is passive and so far removed from the direct causation.

In making these determinations, the court is sensitive to the many repercussions which might result from such an extension of duties. Some courts have dismissed this in terms of foreseeability, others have referred to causation. But, the conclusion is best expressed in terms of duty. See W. Prosser, *The Law of Torts* §43, at 251 (4th Ed. 1971).

While this order of dismissal is not based upon the insufficiency of the pleadings, the allegations in the amended complaint also pose problems with respect to the question of proximate causation. The court made it clear in its last order that additional facts would have to be alleged with respect to proximate causation, yet the amended complaint does not contain facts sufficient to show whether proximate causation existed even if a duty had existed. The failure to set forth facts with respect to the location of other vehicles within the intersection at the time of the collision, or the order of entry into the intersection of each of the two vehicles involved in the collision, makes it extremely difficult to determine whether the proximate cause of the accident could have been the violation of a statute or municipal ordinance. See Fla. Stat. §316.121 (1971); Metropolitan Dade County, Fla., Code §30-266 (1971). Also, the plaintiffs fail to allege facts sufficient for the court to determine whether an independent intervening cause was present. See Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227 (Fla. 1st Dist. 1960); cert. denied, 127 So.2d 441 (Fla. 1961).

Leave is granted to the plaintiffs to file a second amended complaint on such theories as they may be advised, and such amended pleading, if submitted, shall be filed no later than October 24, 1973.