**D & H DISTRIBUTING COMPANY,**
Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant–Appellee.**

No. 96–5063.

United States Court of Appeals, Federal Circuit.

Dec. 12, 1996.

Rehearing Denied Feb. 6, 1997.

Alan R. Engel, Sapero & Sapero, of Baltimore, MD, argued for plaintiff-appellant.

R. Alan Miller, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before NEWMAN, MAYER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The dispute in this government contract case arose when the contractor failed to pay its subcontractor for goods that the subcontractor supplied to the government. After the contractor became insolvent, the subcontractor sought to recover from the government on one of two theories: either (1) that it had entered into an implied-in-fact contract with the government; or (2) that it was a third party beneficiary of the contract between the government and the contractor. The Court of Federal Claims rejected both theories and dismissed the complaint. *D & H Distrib. Co. v. United States*, No. 93–381C (Nov. 30, 1995). We reverse and remand.

I

On June 8, 1989, the National Security Agency (NSA) awarded a contract to Computer Integrated Management Corporation (CIM) for the delivery of 343 computer hard disks. CIM attempted to contract with plaintiff D & H Distributing Company (D & H) to supply the hard disks, but D & H was reluctant to extend credit to CIM. Following negotiations between CIM and D & H, a representative of CIM wrote to NSA asking "to have the formal assignment on the [contract] to be modified" so that both CIM and D & H would be designated as payees on all payments made under the contract. The letter was accompanied by an unexecuted joint payment agreement, which recited that D & H would agree to provide credit to CIM and supply the goods called for under the contract, and that all checks issued under the contract would be made payable jointly to CIM and D & H.

The government did not execute the proposed joint payment agreement. Instead, the contracting officer on July 6, 1989, issued a modification of the contract in accordance with CIM's letter asking that the payee designation in the contract be modified to make CIM and D & H joint payees for the proceeds of the contract. The modification, as issued, provided: "Remittance to be assigned to CIM Corp., 1130 Taft St., Rockville, Md. 20850[and] D & H Distributing Co., 8220 Wellmoor Court, Savage, Md. 20763." Following the issuance of that modification, D & H delivered the hard disks to the government. D & H then billed CIM $83,349 for the hard disks that it had supplied.

On July 19, 1989, CIM submitted an invoice to NSA for the full contract price of $89,523. NSA issued a check in that amount. Contrary to the terms of the July 6 modification, however, NSA issued the check in the name of CIM only, and did not designate D

& H as a joint payee. CIM negotiated the check and subsequently made a partial payment of its obligation to D & H. Approximately $40,000 of CIM's debt to D & H remained unpaid, however. CIM ultimately ceased operating and was left without assets to discharge the rest of its debt.

D & H filed suit against the United States in the Court of Federal Claims, seeking to recover the unpaid portion of its invoice to CIM, plus interest on the debt. D & H argued that it was entitled to recover that sum from the United States on one of two theories: either (1) it had entered an implied-in-fact contract with the United States to make payments jointly to CIM and D & H; or (2) it was a third party beneficiary of the modified contract between the United States and CIM. In either case, D & H argued, the United States had breached its promise to make D & H a joint payee on any payments made under the hard disk contract, and D & H had suffered a loss because of that breach.

The Court of Federal Claims rejected both theories. With respect to the first theory, the court held that D & H had failed to point to facts that satisfied the standards necessary to establish an implied-in-fact contract. In particular, the court held, the contract modification adopted by the government did not reflect that D & H and the government had undertaken any bilateral obligations relating to the hard disk contract. With respect to D & H's third party beneficiary theory, the court held that D & H had failed to show that the government intended to assume a contractual obligation to D & H. The July 6 modification to the contract, the court held, "cannot support a claim by plaintiff that defendant accepted an obligation to further plaintiff's interest." Accordingly, the court granted the government's motion for summary judgment and directed that the complaint be dismissed.

## II

### A

■ D & H argues, briefly, that it should be deemed to have entered an implied-in-fact contract with the United States, the terms of which were that D & H would supply the hard disks to the government in exchange for the government's promise to make D & H a joint payee on any payments made under the government's contract with CIM. The government's breach of that implied-in-fact contract, D & H argues, gives D & H an action against the government for damages. We agree with the Court of Federal Claims that D & H failed to make a sufficient showing from which an implied-in-fact contract between the government and D & H could be found.

The contracting officer made the July 6, 1989, modification following CIM's request to add D & H as a payee on checks issued under the contract. There is no evidence that D & H made any offer to the government or that the government accepted any offer from D & H. In an effort to address that point, D & H argues that CIM must be regarded as acting as D & H's agent in presenting an offer to the government, but there is no evidence from which any such agency relationship can be inferred. Moreover, D & H's proof fails with respect to its claim that the July 6 modification must be regarded as an acceptance of D & H's offer. There was no evidence before the trial court that the modification was intended to constitute the acceptance of an offer by D & H; instead, the evidence before the court suggests that the government was simply responding to a request by CIM to change the designation of the payees under the contract. Thus, there is no factual or legal basis on which the government's response to the request of its contracting partner, CIM, could be regarded as having the legal effect of forming a new contract between the government and D & H, which was a stranger to the original contract. The absence of a showing of mutuality of intent to contract between the government and D & H is fatal to D & H's claim. See *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir.1984).

### B

D & H's principal theory of liability is that the July 6, 1989, modification made D & H a third party beneficiary of the contract be-

tween CIM and the government. Because it enjoyed third party beneficiary status, D & H argues, it should be entitled to enforce the contract by suing the government for failing to comply with its undertaking to include D & H as a payee on all payments made under the contract.

The third party beneficiary issue actually presents two questions that call for separate analysis: (1) whether the July 6, 1989, modification validly amended the contract; and (2) whether the contract, as amended, gave D & H an enforceable right against the government in the event the government failed to comply with the contract clause requiring it to make payments to CIM and D & H jointly. We answer both questions in the affirmative.

1

■■ The contracting officer characterized the July 6, 1989, modification to the contract as an "administrative change," which is a unilateral change authorized under part 43 of the Federal Acquisition Regulation, see 48 C.F.R. § 43.103(b)(1). Because the change was made pursuant to a request by CIM, acceded to by the contracting officer, it might more accurately have been treated as a bilateral modification, which is also authorized by part 43 of the FAR, see 48 C.F.R. § 43.103(a). Although a bilateral modification is required to be signed by both the contracting officer and the contractor, the reason that the modification form was signed only by the contracting officer is that the contracting officer advised the contractor that it was not required to sign the form. Since the contractor had submitted a signed request for precisely the change that was embodied in the modification, both the contractor and the contracting officer had agreed to the modification in writing; under these circumstances, the absence of the contractor's signature on the designated form is no basis for holding that the modification is not binding on the government. Moreover, the government did not argue in the trial court and has not argued here that the July 6, 1989, modification was an invalid amendment to the contract on the ground that it was not supported by consideration; we

therefore decline to decide whether the modification could have been held invalid on that ground.

■ The government argues that the modification should be viewed as an effort by CIM and the contracting officer to assign CIM's claims under the contract to D & H, and that as such the would-be assignment is void under the statutory prohibition against the assignment of rights and claims based on government contracts, see 31 U.S.C. § 3727; 41 U.S.C. § 15. It is well established, however, that the government can waive the statutory prohibitions against the assignment of contract rights if the contracting officer gives clear assent to the assignment. See Tuftco Corp. v. United States, 222 Ct.Cl. 277, 614 F.2d 740, 745–46 (1980); G.L. Christian & Assocs. v. United States, 160 Ct.Cl. 1, 312 F.2d 418, 423 (1963). In this case, the contracting officer clearly assented to the transfer of rights under the contract to D & H, because the contracting officer expressly adopted the new payment arrangement as part of the contract. Accordingly, even if the July 6, 1989, modification is regarded as reflecting an assignment of rights from CIM to D & H, the modification cannot be dismissed as unenforceable on the ground that its inclusion in the contract was beyond the authority of the contracting officer to bind the government.

2

■ The next question is whether D & H, which was not a party to the contract, may enforce the provision of the modified contract requiring the government to make payments jointly to CIM and D & H. We conclude that D & H enjoys the status of a third party beneficiary with respect to the payment clause of the modified contract and is therefore entitled to enforce that clause against the government.

■ Although the parties debate the scope of third party beneficiary principles as applied to government contracts, it is not necessary to explore the outer bounds of third party beneficiary rights in order to resolve this case. In the case of a contract in which the promisee provides goods or services to the promisor, it has long been settled that a

clause providing for the promisor to pay the proceeds of the contract to a third party is enforceable by the third party where the payment is intended to satisfy a present or future liability of the promisee to the third party. The third party beneficiary in that situation has traditionally been referred to as a "creditor beneficiary" and has been accorded full rights to sue under the original contract. *See* 4 Arthur Linton Corbin, *Corbin on Contracts* § 787 (1951); 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 10.2 (1990); 2 Samuel Williston, *A Treatise on the Law of Contracts* §§ 361–64, 381 (Walter H.E. Jaeger ed., 3d ed.1959); *Restatement of Contracts* § 133(1)(b) (1932); *see also Restatement (Second) of Contracts* § 302 (1981) (extending third party beneficiary status to the broader category of "intended" beneficiaries).

The same principle would apply if the payment clause provided that a portion of the proceeds would be paid to the promisee and a portion to the third party. Indeed, the government has often successfully invoked that rule in seeking to enforce a contract between private parties that included an undertaking by the promisor to pay a debt owed by the promisee to the government. *See, e.g., United States v. Wood,* 877 F.2d 453, 457–58 (6th Cir.1989); *Karpe v. United States,* 167 Ct.Cl. 280, 335 F.2d 454, 463 (1964); *United States v. Phoenix Indem. Co.,* 231 F.2d 573, 575 (4th Cir.1956); *United States v. Scott,* 167 F.2d 301, 302–03 (8th Cir.1948); *see also Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 499 n. * (Fed.Cir.1990) (identifying government as intended third party beneficiary of performance bond contract between contractor and surety).

We see no reason to adopt a different rule in the case of a joint payment provision, such as the one in this case, where the only difference is that the respective shares of the two parties is not specified in the contract. Consistent with this analysis, court decisions involving such joint payment agreements have characterized them as making the joint payee a third party beneficiary of the contract with the right to sue the promisor for breach. *See, e.g., United States ex rel. Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.,* 802 F.2d 1164, 1167–68 (9th Cir.1986); *Merco Mfg., Inc. v. J.P. McMichael Constr. Co.,* 372 F.Supp. 967, 971–72 (W.D.La.1974); *cf. Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 1441 (11th Cir.1996) (assuming arguendo that joint payment provision in contract created a third party beneficiary arrangement under Florida law).

The entire purpose of the joint payment clause was to provide protection for D & H by giving it a right to control the disbursement of the contract proceeds and thereby to ensure that its invoice to CIM would be paid. The rights conferred on D & H were designed to effectuate the payment of CIM's debt to D & H, which would arise upon CIM's execution of the contract. This case therefore presents a particularly clear instance in which the third party beneficiary's interests, specifically protected by the contract, would be impaired if the beneficiary were not accorded the right to obtain relief against the promisor in the event of a breach. *Cf. Fireman's Fund Ins. Co.,* 909 F.2d at 499 n. * (identifying subcontractors and suppliers as intended third party beneficiaries of a payment bond, which is a contract between the contractor and the surety that ensures that subcontractors and materialmen will be paid if the contractor defaults). Accordingly, we conclude that D & H is entitled to enforce the payment provision of the contract, and that the breach of that provision by the government gave D & H a cause of action against the government for damages.

■■ The same result obtains if, as the government suggests, the contract modification is regarded not as giving D & H the status of a third party beneficiary, but as constituting an assignment of rights under the contract from CIM to D & H. A complete or partial assignment of the right to be paid the proceeds of the contract imposes an obligation on the promisor, once it has received notice of the assignment, to make payments under the contract in accordance with that assignment. The promisor can be held liable on that obligation to the assignee if the promisor makes payments to the assignor, rather than to the assignee in accordance with the terms of the assignment. *See Produce Factors Corp. v. United States,* 199

Ct.Cl. 572, 467 F.2d 1343, 1349 (1972); *Central Nat'l Bank v. United States*, 117 Ct. Cl. 389, 91 F.Supp. 738, 741 (1950) ("The Government having received timely notice of plaintiff's assignment paid [the assignor] at its peril.... And where an erroneous payment is made by the Government it is no bar to the rightful claimant."). Thus, if the July 6, 1989, modification is characterized as an assignment of rights under the contract, assented to by the government, it is appropriate to hold the government liable to D & H for its failure to make payment in accordance with the contract terms.

For these reasons, we do not agree with the government that it can avoid the consequences of its breach of the payment clause of the modified contract. We therefore reverse the judgment of the Court of Federal Claims and remand for further proceedings on D & H's complaint.

Costs to D & H.

*REVERSED AND REMANDED.*