**NORWEST BANK ARIZONA, N.A. and Arizona Millwork, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 95–287 C.

United States Court of Federal Claims.

March 10, 1997.

**606**

Steven W. Cheifetz, Cheifetz & Iannitelli, Phoenix, Arizona, for plaintiffs.

Carol L. Wallack, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

Plaintiff Arizona Millwork was a subcontractor on a Navy project to provide modular buildings to the prime contractor. Plaintiff ceased delivering the modules until the prime would agree to assign its payments on the contract to Arizona Millwork's bank. The contractor assigned the payments and the modules were delivered, but the Navy paid the contractor instead. Plaintiffs argue that the Navy violated a valid and enforceable assignment; defendant contends that the bank did not have a valid assignment.

We hold that the Government was obligated to pay the bank because the contracting officer expressly bound the Government by a modification to the contract. Arizona Millwork is a third-party beneficiary to the contract. The prime's assignment of payments was enforceable despite alleged statutory deficiencies, because the contracting officer assented to the assignment and expressly named the bank as payee under the contract.

### FACTS

Modesco, Inc. contracted with the United States Navy to install modular buildings at the Naval Command and Control Center in San Diego, California. Modesco subcontracted with Arizona Millwork to construct and deliver modular buildings to the site. Arizona Millwork drew upon a revolving credit line with Caliber Bank, predecessor to plaintiff Norwest Bank Arizona, to finance performance.[1]

Soon after performance commenced, Arizona Millwork became concerned about Modesco's ability to make payments on the subcontract. It suspended deliveries until Modesco agreed to assign its payments to the subcontractor's bank. Modesco agreed to assign the proceeds, and notified the Navy.

Modesco sent the original and three copies of a notice of assignment to the Navy in March 1994. The contracting officer determined that the notice was insufficient because the Bank had not signed it. The Navy returned the notice to Modesco.

Modesco's president hand-delivered a package containing two envelopes to the contracting office reception desk on April 11.

---

1. Caliber Bank was Arizona Millwork's bank for     the relevant time period related to this case.

Each envelope held an original and three copies of the notice of assignment, and a copy of the assignment. One envelope was marked for delivery to the contracting office and the other was marked for delivery to the payment office. The disbursing officer could not recall whether the notice of assignment was delivered to the payment office.[2]

A contracting specialist forwarded the assignment documents to the Navy's legal department for approval on April 11. The legal department returned the documents to the contracting office the next day. The contracting officer acknowledged receipt of the notice of assignment on April 13.

Modesco billed the Navy $129,324.09 two weeks later on April 28. On May 4, the contracting officer ratified the assignment and issued a modification to the contract naming the Bank as payee. The contracting specialist routed the notice of assignment with attached modification to the payment office. Twelve days later, on May 16, the prime contractor asked the payment office to pay Modesco instead of the Bank. The payment office says it received the modification with the attached notice of assignment on May 17.[3] The Navy issued a check dated May 17 to Modesco. Modesco cashed the check on May 23 and filed for bankruptcy.[4]

Caliber had financed Arizona Millwork's performance of the subcontract. When the Government paid Modesco and Modesco absconded, the Bank required Arizona Millwork to satisfy the debt. Arizona Millwork paid its bank and sued the United States for recovery.

## I.

Modesco no longer exists. Arizona Millwork originally brought this action seeking reimbursement of funds the Navy promised to pay the Bank. Defendant moved to dismiss the complaint because Arizona Millwork was not in privity of contract with the United States. Arizona Millwork amended the complaint to substitute its bank as plaintiff. With the Bank as sole plaintiff, the Government then moved to dismiss for lack of standing. The Government argued that because the Bank had been paid, the Bank cannot maintain this action. The Government's position is that no one may bring a claim to recover for the Government's mistake—the subcontractor lacks privity of contract and the Bank lacks standing.

Arizona Millwork is a third-party beneficiary of the contract between the Government and Modesco. The Government and the prime modified the contract here because the subcontractor wanted a more reliable source of payment for its lender. It is well established that third-party beneficiaries may enforce contracts. *See German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *D & H Distrib. Co. v. United States*, 102 F.3d 542, 546–47 (Fed.Cir.1996); *see also* Restatement (Second) of Contracts § 302 (1981).

A plaintiff has standing to sue when it can show some actual or threatened injury that is concrete and particular, fairly traceable to the putatively illegal conduct of the defendant, and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wild-*

**2.** Had the notice of assignment been delivered to the payment office, it would have been rejected and routed immediately to the contracting office because the disbursing officer would not accept a notice of assignment without a modification attached. This means that the payment office would ignore an assignment until after the contracting officer modified the contract. The disbursing officer here paid a person not named as payee under the contract as a result of this procedure.

**3.** The Naval Command and Control Center in San Diego is a large complex, but the contracting office and the payment office are located in the same building, separated by a floor and approximately 100 yards. It took 13 days for the notice of assignment and attached modification to reach the payment office. None of the routing slips that usually accompanied such documents for internal distribution was available during trial.

**4.** Despite a formal procedure for notifying appropriate Navy officials of the assignment, the Government authorized payment to a contractor that was on its way to bankruptcy. The Government had no explanation for this oversight, and it could not provide documentation that normally would be present. We have not drawn conclusions or inferences from testimony and evidence related to this concern because defendant is liable according to the facts that we have found and the applicable law.

*life,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

When Arizona Millwork asked Modesco to assign its payments to the Bank, Arizona Millwork and the Bank agreed that proceeds from the assignment would be applied to replenish the drawdown from Arizona Millwork's line of credit. When the Government paid Modesco instead, Arizona Millwork paid the Bank to avoid default. This payment, the Government contends, deprived the Bank of standing because the Bank no longer suffered a redressable injury-in-fact. Had Arizona Millwork defaulted on its loan from the Bank, apparently the Bank's standing would not be in question.

We reinstated Arizona Millwork as co-plaintiff pursuant to RUSCFC 21. That rule grants this court discretion to add a party plaintiff when it is just to do so and not prejudicial to defendant. *See Mullaney v. Anderson,* 342 U.S. 415, 417, 72 S.Ct. 428, 429–30, 96 L.Ed. 458 (1952); *Persyn v. United States,* 34 Fed.Cl. 187 (1995); *Goodwyn v. United States,* 33 Fed.Cl. 730 (1995). Arizona Millwork was the original plaintiff in this case. Both plaintiffs retained the same counsel and have asserted identical interests. The Bank has agreed to forward any judgment amount obtained from this litigation to Arizona Millwork; a judgment for the Bank is equivalent to a judgment for Arizona Millwork.

## II.

■ Generally, a third party may not enforce a contract. A subcontractor may not sue the Government directly on a prime contract without establishing privity of contract. *See W.R. Cooper Gen. Contractor, Inc. v. United States,* 12 Cl.Ct. 406, 408 (1987); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1551 (Fed.Cir.1983) (explaining that the term "contractor" under the Contract Disputes Act of 1978 does not include a subcontractor to a government contract).

■ A third-party beneficiary may enforce a contract, however. *See German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195 (1912); *D & H Distrib. Co. v. United States,* 102 F.3d 542

(Fed.Cir.1996); *Schuerman v. United States,* 30 Fed.Cl. 420 (1994). To achieve third-party beneficiary status, the third party must be an intended beneficiary of the contract. The intention to benefit the third-party may be express or implied. "The proper test for determining third-party beneficiary status is whether the contract reflects the express or implied intention of the parties to benefit the third party...." *Schuerman,* 30 Fed.Cl. at 433. That is, the contracting parties need not grant the claimant a "direct right to compensation or to enforce that right against the promisor." *Baudier Marine Elecs., Sales and Serv., Inc. v. United States,* 6 Cl.Ct. 246, 249 (1984) (*quoted in Schuerman,* 30 Fed.Cl. at 428 (limiting the two-party *Baudier* test to its first prong: the "intention-to-benefit" test)), *aff'd mem.,* 765 F.2d 163 (Fed.Cir.1985).

■ The "intention-to-benefit" test can be satisfied by showing that the promisee was obligated to pay or otherwise benefit the beneficiary.

Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981). The Federal Circuit has affirmed this view:

In the case of a contract in which the promisee provides goods or services to the promisor, it has long been settled that a clause providing for the promisor to pay the proceeds of the contract to a third party is enforceable by the third party where the payment is intended to satisfy a present or future liability of the promisee to the third party. The third party beneficiary in that situation has traditionally been referred to as a "creditor beneficiary"

and has been accorded full rights to sue under the original contract.

*D & H*, 102 F.3d at 546–47.

In *D & H*, the prime contractor experienced difficulty negotiating a credit arrangement with its prospective subcontractor. The subcontractor, D & H, agreed to extend credit to the prime if the Government and the prime would agree to a joint payment agreement whereby D & H and the prime would be designated as payees on all contract payments. The Navy modified the contract to designate the prime and D & H as joint payees.

The prime invoiced the Government for the full amount of the contract price upon completion. Contrary to the terms of the modification, however, the Government's payment named the prime only. The prime negotiated the check and made a partial payment to D & H before declaring bankruptcy. D & H filed suit in this court seeking payment from the Government for the amount that it was not paid.

Despite the Government's privity argument, the Circuit ruled that D & H may enforce the contract as third-party beneficiary.

> The entire purpose of the joint payment clause was to provide protection for D & H by giving it a right to control the disbursement of the contract proceeds and thereby to ensure that its invoice to [the prime] would be paid. The rights conferred on D & H were designed to effectuate payment on [the prime]'s debt to D & H, which would arise upon [the prime]'s execution of the contract. This case therefore presents a particularly clear instance in which the third party beneficiary's interests, specifically protected by the contract, would be impaired if the beneficiary were not accorded the right to obtain relief against the promisor in the event of a breach.

*D & H*, 102 F.3d at 547.

██ The subcontractors in this case and in *D & H* were forced to deal with financially unstable prime contractors. In both cases, the subcontractors asked their primes to arrange more secure forms of payment backed by express contract modifications. D & H

attempted to secure payment by urging the Government to name the subcontractor co-payee on the prime contract. Arizona Millwork withheld deliveries until Modesco assigned its payments to Arizona Millwork's bank. The Government agreed to pay the Bank directly.

Modesco and the Government shared the intention that modular buildings be installed for the Navy. By granting Arizona Millwork's bank the right to payment under the prime contract, the parties sought to "effectuate the[ir] intention[s]." Restatement (Second) of Contracts § 302. The prime contract could not be accomplished until the payments were assigned. Had Arizona Millwork not been assured that the contract would be modified, the modules would not have been delivered to Modesco. This would have materially impaired the prime contract.

Modesco agreed to assign its payments to satisfy "a present or future liability of the promisee to the third party." *D & H*, 102 F.3d at 547. As a party to the subcontract, Modesco could be held liable to Arizona Millwork for failure to make payment. Modesco assigned its payments to the subcontractor's bank with the intent to discharge or prevent any present or future liability to Arizona Millwork. Thus, Arizona Millwork is a "creditor beneficiary and [should be] accorded full rights to sue under the original contract." *Id.* The modification solidified the subcontractor's right to enforce the Government's obligation to pay the Bank.

### III.

The Government moved to dismiss the complaint because the assignment allegedly did not comply with the requirements of the Anti–Assignment Acts, 31 U.S.C. § 3727, 41 U.S.C. § 15.

██ The Anti–Assignment Acts generally prohibit the assignment of government contracts unless: (1) the assignee is a qualified financial institution; (2) funds lent or made available are for performance of the contract; and (3) true and correct copies of the assignment documents are provided to the contracting officer and the disbursing officer. *See American Nat'l Bank & Trust Co. of*

*Chicago v. United States,* 22 Cl.Ct. 7, 16 (1990). The Government contends that the assignment in this case is defective because it fails to satisfy the second and third requirements. Plaintiffs challenge this assertion categorically, and argue that any such defects were waived when the contracting officer modified the contract to pay the Bank.

Modesco hand-delivered a package containing copies of the assignment and notices to the receptionist at the contracting office. The Government asserts that because the documents were not hand-delivered to the contracting officer and payment officer respectively, notice of the assignment was defective. The assignment also was invalid because the Bank did not finance contract performance, according to defendant.

■ The contract modification obligated the Government to pay the Bank. It is not necessary to determine whether the assignment comported with the technical requirements imposed by the Anti–Assignment Acts. Such defects, if any, were waived when the Government expressly agreed to pay the Bank.

In *D & H Distributing Co. v. United States,* the Government pointed to alleged irregularities and argued that the modification naming both the prime and subcontractor joint payees was an invalid assignment barred by the Anti–Assignment Acts. The court chose not to consider these allegations, however, because "[i]t is well established . . . that the government can waive the statutory prohibitions against the assignment of contract rights if the contracting officer gives clear assent to the assignment." *D & H,* 102 F.3d at 546 (citing *Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 614 F.2d 740, 745–46 (1980), and *G.L. Christian & Assocs. v. United States,* 160 Ct.Cl. 1, 312 F.2d 418, 423 (1963)). In *D & H,* the contracting officer clearly assented to the transfer of rights under the contract to D & H, because the contracting officer expressly adopted the new payment arrangement as part of the contract. Accordingly, even if the July 6, 1989, modification is regarded as reflecting an assignment of rights from [the prime] to D & H, the modification cannot be dismissed as unenforceable on the ground that its inclusion in the contract was beyond the authority of the contracting officer to bind the government.

*D & H,* 102 F.3d at 546. Thus, the contracting officer waived any possible defects with the assignment when he modified the contract to name D & H co-payee.

The contracting officer here also adopted the new payment arrangement as part of the contract.

> A complete or partial assignment of the right to be paid proceeds of the contract imposes an obligation on the promisor, once it has received notice of the assignment, to make payments under the contract in accordance with that assignment. The promisor can be held liable on that obligation to the assignee if the promisor makes payments to the assignor, rather than to the assignee in accordance with the terms of the assignment.

*Id.* at 547.

Whether the proper personnel at the Naval Control and Command Center received proper notice of the assignment, and whether the assignee bank financed contract performance is immaterial in the circumstances of this case. The Government expressly agreed to the assignment directing payments to the Bank.

## CONCLUSION

The Navy issued a modification designating Arizona Millwork's bank as payee under the contract. Several days later, the Government paid the contractor instead. The contractor absconded, and Arizona Millwork had to meet its obligation to its bank. The Government was obligated to pay the Bank under the contract and it did not do so. The contract required the Government to pay one entity and it paid another.

The Clerk will enter judgment for plaintiffs. Costs to plaintiffs.