# In the United States Court of Federal Claims

No. 12-186 C
(E-Filed:  February 13, 2013)

|  |  |  |
|---|---|---|
| RED HAWK CONSTRUCTION, INC., | ) | |
| | ) | Dismissal of Complaint for Lack |
| Plaintiff, | ) | of Jurisdiction Because Plaintiff |
| | ) | Is Without the Rights Plaintiff |
| v. | ) | Claims in the Proceeds of a |
| | ) | Government Contract |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Howell R. Riggs, Huntsville, AL, for plaintiff.

Steven M. Mager, Trial Attorney, with whom were Stuart F. Delery, Principal Deputy
Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy
Director, Commercial Litigation Branch, Civil Division, United States Department of
Justice, Washington, DC, for defendant.  Kathryn R. Sommerkamp, Assistant Counsel,
United States Army Corps of Engineers, Huntsville, AL, of counsel.

OPINION

HEWITT, Chief Judge

I.      Background[1]

---

[1]The following factual background is drawn from Red Hawk Construction, Inc.'s
(plaintiff or Red Hawk) Complaint (Complaint or Compl.), Docket Number (Dkt. No.) 1, and
undisputed portions of the factual record, cf. Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197
(D.C. Cir. 1992) (stating that, "where necessary [to address a motion to dismiss under Rule
12(b)(1) of the Federal Rules of Civil Procedure (FRCP)], the court may consider the complaint
supplemented by undisputed facts evidenced in the record").

The Rules of the United States Court of Federal Claims (RCFC) generally mirror the
FRCP.  See RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be
guided by case law and the Advisory Committee Notes that accompany the [FRCP].").  Rule 12
of the RCFC is substantially similar to Rule 12 of the FRCP.  Compare RCFC 12 with FRCP 12.

Plaintiff Red Hawk Construction, Inc. (plaintiff or Red Hawk) is a subcontractor on contract number W912DY-05-D-0020, an indefinite delivery, indefinite quantity, multiple award task order contract (the contract) for the installation of security gates and related electronic equipment at military facilities. Complaint (Complaint or Compl.), Docket Number (Dkt. No.) 1, at 1, ¶ 1;[2] see Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. (defendant's Motion or Def.'s Mot.), Dkt. No. 13, Def.'s App'x[3] 2 (contract) (executive summary). The prime contractor is Government Technical Services, LLC (GTS). Compl. ¶ 1. Defendant is the United States government, acting through the United States Army Corps of Engineers (defendant or the government). Id. at 1.

GTS was awarded two task orders under the contract, Task Order 0002 and Task Order 0004. Id. ¶ 2. After a dispute arose, the government terminated Task Order 0004 for default,[4] id. ¶ 3, and, on January 16, 2009, issued a stop-work order with regard to Task Order 0002, Def.'s App'x 198 (Jan. 16, 2009 letter from government to GTS); see Compl. ¶ 6. On March 6, 2009 GTS met with the government's contracting officer, Ms. Myra Maack. See Compl. ¶¶ 6-7; Def.'s App'x 200 (Mar. 6, 2009 letter from government to GTS) (memorializing the content of the meeting). Ms. Maack agreed to lift the stop-work order if GTS assigned the proceeds of the contract to ServisFirst Bank (ServisFirst) with the understanding that ServisFirst would hold any contract proceeds in escrow until advised by the government that they should be disbursed to GTS or the subcontractors.[5] See Compl. ¶ 7; Def.'s App'x 200 (Mar. 6, 2009 letter from government

---

The court therefore relies on authorities interpreting FRCP 12 as well as authorities interpreting RCFC 12.

[2]Plaintiff's Complaint is organized into numbered paragraphs with the exception of an introductory section, a section addressing the court's jurisdiction and a prayer for relief. See Compl. passim. The court provides paragraph numbers when citing the numbered paragraphs and page numbers when citing the other portions of the Complaint.

[3]Citations to the appendix to defendant's Motion use the page numbers provided by defendant. See Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. (defendant's Motion or Def.'s Mot.), Dkt. No. 13, Def.'s App'x.

[4]A challenge to the government's termination of Task Order 0004 for default remains pending before the undersigned, Compl. ¶ 3, and is currently stayed pending criminal proceedings against the owner of Government Technical Services, LLC (GTS), Mr. Joseph Terry, see Gov't Tech. Servs., LLC. v. United States, No. 10-403 C, Dkt. No. 40, at 1 (Fed. Cl. Jan. 11, 2013).

[5]Defendant asserts that the account actually opened by GTS was not an escrow account, but "was, in effect, an ordinary money market account set up by GTS's president, Joseph Terry, from which he could and did withdraw much or all of the account balance at any time." Def.'s Mot. 4 n.5. Defendant further states that payments were made from the account to, among

2

to GTS).  Plaintiff alleges that, "[b]ecause GTS had been inconsistent with payments to subcontractors, it was important to both [GTS and the government] to create an assignment which would insure payment directly to the subcontractors without GTS interference."  Compl. ¶ 8.

On April 2, 2009 Mr. Joseph Terry, the managing member and president of GTS, adopted a resolution authorizing GTS to "assign claims on [the contract] to ServisFirst." Def.'s App'x 201 (GTS member resolution).  The same day, GTS and ServisFirst executed a document, titled "Assignment of Government Contract" (the assignment agreement), which stated that GTS "sells, assigns and transfers to ServisFirst . . . all monies due or to become due to the assignor from the [government] under [the contract]."  Id. at 202-03 (assignment agreement) (capitalization omitted); see also Compl. ¶¶ 7-9 (describing the assignment to ServisFirst).  Ms. Maack received notice of the assignment agreement on April 13, 2009.  Compl. ¶ 9.  On April 16, 2009 Ms. Mack issued a unilateral amendment to the contract, indicating that, consistent with the assignment agreement, the government would make its payments to ServisFirst instead of GTS.  See Def.'s App'x 166-67 (Apr. 16, 2009 modification) ("The purpose of this modification is to change the name and address of the payee in accordance with the attached Notice of Assignment.").

A process was established whereby GTS would submit invoices for work performed by GTS and its subcontractors to Ms. Maack.  Compl. ¶ 8.  Ms. Maack would direct ServisFirst to make payments to GTS and the subcontractors.  Id.  In 2011 Ms. Maack was replaced by a new contracting officer, Mr. Jeffrey Burgess.[6]  Id. ¶ 12. Plaintiff alleges that on February 9, 2011, Mr. Burgess wrongfully issued a progress payment in the amount of $1,634,412.63 directly to GTS, notwithstanding the assignment to ServisFirst.[7]  See id.  At the time of this payment, GTS owed approximately $280,000 to Red Hawk.  Id.  Plaintiff alleges that the payment "appears to be a subterfuge created by Burgess to undermine and violate the assignment of claim and not compensate the

---

others, Mr. Aaron Terry, "Joseph Terry's father, the representative of GTS, and the president of Red Hawk," and to Mr. Howell Riggs, who serves as counsel to both GTS and Red Hawk.  Id. (citing id. at Def.'s App'x 240-44).  These assertions, although not disputed by plaintiff, do not affect the court's resolution of defendant's Motion.

[6]The date that Mr. Jeffrey Burgess replaced Ms. Myra Maack as contracting officer is not clear from plaintiff's Complaint.  Plaintiff states that Mr. Burgess arrived in May 2011, Compl. ¶ 12, but describes a number of actions that Mr. Burgess allegedly undertook as contracting officer in February 2011, see id. ¶ 13.

[7]The court does not consider the evidence provided by defendant that this payment was not made.  See infra Part III.C (finding moot defendant's request that the court find, pursuant to Rule 12(b)(1) or Rule 56, that no payment was made to GTS).

3

subcontractor." Id. Plaintiff alleges that, on February 15, 2011, Mr. Burgess "concocted or falsified invoices from GTS," id. ¶ 12, "in an improvident attempt to reprogram money from the GTS contract without the knowledge of the prime contractor or its subcontractors," id. ¶ 13. Plaintiff further alleges that Mr. Burgess, with the "actual knowledge" of an additional government employee, Ms. Donna Lawson, "falsified documents and concocted falsified contract modifications." Id. Plaintiff alleges that the result of Mr. Burgess' actions was to secretly defund Task Order 0002 in a fashion that would lead GTS and its subcontractors to continue working without the knowledge that they would not be paid. Id. Plaintiff alleges that until "May 2011, the Government exhorted GTS and its subcontractors to continue performance on Task Order 0002." Id. ¶ 11. On June 1, 2011 the government terminated Task Order 0002 for default. Id. ¶ 10.

Plaintiff filed this action in the United States Court of Federal Claims (Court of Federal Claims) on March 22, 2012, contending that it is an assignee of the proceeds of the contract and that $280,000 owed to plaintiff was wrongfully paid to GTS instead of to ServisFirst for disbursement to plaintiff. See id. at 1, 8.

On August 20, 2012 defendant filed a motion to dismiss plaintiff's Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) or, in the alternative, for summary judgment pursuant to Rule 56 of the RCFC. See Def.'s Mot. 1. Plaintiff failed timely to file a response to defendant's Motion, but was granted a second opportunity to respond. See Order of Oct. 2, 2012, Dkt. No. 14; Order of Oct. 16, 2012, Dkt. No. 17. Now before the court are defendant's Motion; plaintiff's Memorandum of Law and Response to Defendant's Motion to Dismiss and Alternativ[e]ly Motion for Summary Judgment (plaintiff's Response or Pl.'s Resp.), Dkt. No. 18, filed October 19, 2012; and Defendant's Reply to Plaintiff's Response to Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (defendant's Reply or Def.'s Reply), Dkt. No. 26, filed November 9, 2012.[8]

Also before the court are three stayed motions (and associated briefing) related to defendant's alternative motion for summary judgment: plaintiff's Motion to Strike, Dkt. No. 19, filed October 19, 2012; plaintiff's Motion to Permit Discovery (plaintiff's Motion for Discovery or Pl.'s Mot. Disc.), Dkt. No. 20, filed October 19; and Plaintiff's [] Motion to Stay Summary Judgment (plaintiff's Motion to Stay or Pl.'s Mot. Stay), Dkt. No. 31, filed November 27, 2012. In light of the requirement that the court construe the RCFC "'to secure the just, speedy, and inexpensive determination of every action and proceeding,' RCFC 1, on November 1, 2012 the court informed the parties that it would address defendant's motion to dismiss before considering" the other motions. Order of Nov. 28, 2012, Dkt. No. 33, at 1 (citing Order of Nov. 1, 2012, Dkt. No. 21).

---

[8]Plaintiff also filed a sur-reply (followed by three untimely motions for leave to file a sur-reply), which it then requested that the court disregard. See Order of Dec. 12, 2012, Dkt. No. 41, at 1-2.

II.     Legal Standards

A.      Motions to Dismiss Under Rule 12(b)(1) of the RCFC

A motion under Rule 12(b)(1) of the RCFC challenges the court's subject matter jurisdiction.  See RCFC 12(b)(1).  "[T]he party who seeks the exercise of jurisdiction in his favor" has the burden of "alleg[ing] in his pleading the facts essential to show jurisdiction."  McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).  "If a Rule 12(b)(1) motion simply challenges . . . the sufficiency of the pleading's allegations--that is, the movant presents a 'facial' attack on the pleading--then those allegations are taken as true and construed in a light most favorable to the complainant."  Cedars-Sinai Med. Ctr. v. Watkins (Cedars-Sinai), 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  However, "[u]nsupported conclusions of law can be disregarded in determining the motions set forth in Rule 12(b)."  5C Charles Alan Wright et al., Federal Practice & Procedure (Federal Practice & Procedure) § 1363 (3d ed. 2012).

If the motion challenges factual allegations in the complaint, the challenged allegations "are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion."  Cedars-Sinai, 11 F.3d at 1583 (internal citations omitted).  In deciding such a factual challenge, "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony" and make findings of fact regarding the controverted factual allegations.  Id. at 1584 (citing, inter alia, Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)).  The proponent of jurisdiction "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

If the court determines that it lacks jurisdiction, it must dismiss the case.  RCFC 12(h)(3).

B.      The Court's Jurisdiction to Hear the Claims of Contractors and Assignees

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584, 586 (1941) (internal citations omitted).  Such a waiver of sovereign immunity must be "unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).  Accordingly, "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver."  United States v. White Mountain Apache Tribe (White Mountain), 537 U.S. 465, 472 (2003) (internal citation omitted).  The Tucker Act, which provides such a waiver, White Mountain, 537 U.S. at 472, states that "the United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United

5

States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2006). The waiver of sovereign immunity in the Tucker Act does not extend to the claims of subcontractors, who are not in privity of contract with the government, Erickson Air Crane Co. of Wash v. United States (Erickson), 731 F.2d 810, 813 (Fed. Cir. 1984), but does extend to assignees, "except as barred by . . . the Anti-Assignment Act," see Ins. Co. of the W. v. United States, 243 F.3d 1367, 1375 (Fed. Cir. 2001). Such assignees are not in privity of contract with the government, see Produce Factors Corp. v. United States (Produce Factors), 199 Ct. Cl. 572, 580, 467 F.2d 1343, 1348 (1972), but may sue to collect funds improperly paid to another, D&H Distrib. Co. v. United States (D&H), 102 F.3d 542, 547 (Fed. Cir. 1996); Thomas Funding Corp. v. United States (Thomas Funding), 15 Cl. Ct. 495, 502 (1988).

"What is commonly called the Anti-Assignment Act consists of two statutory provisions."[9] Fireman's Fund Ins. Co. v. England (Fireman's Fund), 313 F.3d 1344, 1349 (Fed. Cir. 2002). The first provision, which addresses the assignment of government contracts (the Contracts Act), states that any attempt to transfer a government contract or an interest in a government contract annuls the contract. 41 U.S.C.A. § 6305(a) (West 2013). However, if not forbidden by the contract, amounts due under the contract "may be assigned to a bank, trust company, Federal lending agency, or other financing institution." Id. § 6305(b)(1). Unless expressly authorized by the contract, such an assignment "must cover the balance of all amounts due from the Federal Government" and, with an exception not relevant here, "may not be made to more than one party or be subject to further assignment." Id. § 6305(b)(4)-(5).

The second provision, which addresses the assignment of claims against the government (the Claims Act), states that the assignment of a claim, an interest in a claim or the authorization to receive payment for part of a claim, "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(a)-(b) (2006). The assignment must "specify the warrant, must be made freely, and must be attested to by 2 witnesses." Id. § 3727(b). Additionally, "[t]he person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment." Id. These limitations do not apply "to an assignment to a financing institution of money due or to become due under a contract," provided that such an assignment is not forbidden by the contract. Id. § 3727(c). Unless the contract expressly provides otherwise, the assignment to a financing institution must be "for the entire amount not already paid," must be "made to only one party"[10] and "may not be reassigned." Id. § 3727(c)(2). Written notice and a

---

[9]For clarity, the court refers to the provisions separately or, when discussing them together, as the Anti-Assignment Acts.

[10]The assignment "may be made to a party as agent or trustee for more than one party participating in the financing," 31 U.S.C. § 3727(c)(2)(B) (2006), a provision inapplicable here.

copy of the assignment to a financing institution must be provided to the "contracting official or the head of the agency, the surety on the bond on the contract, and any disbursing official for the contract." Id. § 3727(c)(3).

> Read together, the Contracts Act and the Claims Act
>
> broadly prohibit (with narrow exceptions . . .) transfers of contracts involving the United States or interests therein, and assignment of claims against the United States. Such contracts (or interest therein) may not be transferred and such claims may be assigned 'only after' they have been allowed in a specific amount and provisions made for their payment.

Fireman's Fund, 313 F.3d at 1349. Although the Claims Act relates to claims for work already done and the Contracts Act relates to continuing obligations, "[i]n general terms, . . . the concerns of the two statutes and the legal concepts involved in their applicability are the same." Tuftco Corp. v. United States (Tuftco), 222 Ct. Cl. 277, 284 n.4, 614 F.2d 740, 744 n.4 (1980).

Both provisions "are for the protection of the Government" and may be waived. Delmarva Power & Light Co. v. United States, 542 F.3d 889, 893 (Fed. Cir. 2008) (quotation marks omitted). To determine whether the government has waived the protection of the Anti-Assignment Acts, courts examine whether "the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments." Tuftco, 222 Ct. Cl. at 287, 614 F.2d at 746. The contracting officer must give "clear assent to the assignment." D&H, 102 F.3d at 546.

III.    Discussion

Defendant's Motion raises three arguments. First, defendant contends that plaintiff is not in privity of contract with the government because plaintiff is a subcontractor that was not assigned the right to the proceeds of the contract. See Def.'s Mot. 1, 7-10. Second, defendant contends that an assignment of the proceeds of the contract to Red Hawk would not have met the requirements of the Anti-Assignment Acts. See id. at 1, 10. Because Red Hawk was not and could not have been assigned the right to the proceeds of the contract, defendant argues, the court lacks subject matter jurisdiction over plaintiff's claims. See id. at 1, 9-10.

Third, defendant argues that the assignee of the proceeds of a government contract has standing to recover against the government only if payment is wrongfully made to a third party. See id. at 2, 10-11. Defendant contends that dismissal for lack of jurisdiction is warranted because no such wrongful payment was made, a fact that defendant believes plaintiff acknowledges in its Complaint and Response. See id. at 11-12; Def.'s Reply 7. In the alternative, defendant contends that it is entitled to summary judgment on the

7

ground that no such wrongful payment was made.  See Def.'s Mot. 2, 12-13.  The court addresses each of these arguments in turn.

A.  Because Plaintiff is a Subcontractor, Not an Assignee, the Court Lacks Jurisdiction to Hear its Claims

Defendant contends that the court lacks jurisdiction to hear plaintiff's claims because neither GTS nor ServisFirst assigned Red Hawk the right to the proceeds of the contract.  See id. at 9-10.  Defendant contends that absent an assignment, Red Hawk, as a subcontractor, is not in privity of contract with the government and cannot proceed against the government for an alleged wrongful payment to GTS.  Id. at 7 (citing Erickson, 731 F.2d at 813).  Defendant alleges that the only assignment made by GTS was to ServisFirst and notes that "Red Hawk did not even exist at the time of the assignment."  Id. at 9 (citing Def.'s App'x 207-12 (Red Hawk Articles of Incorporation)).  Defendant argues that "[o]nly the assignee [(ServisFirst)] may bring suit against the Government for a wrongful payment to a third party."  Id. at 8-9.

Plaintiff appears to respond that the assignment agreement between GTS and ServisFirst in fact assigned Red Hawk the right to a portion of the proceeds of the contract.[11]  Pl.'s Resp. 8 (stating that Red Hawk "was the assignee"); see also Compl. ¶ 16 (stating that Red Hawk is "an assignee of the proceeds of a government contract").  Plaintiff appears to believe that ServisFirst was intended to serve as no more than a conduit for payment to the subcontractors, who were assigned the proceeds of the contract.  See Compl. ¶ 7 (stating that the parties agreed that GTS would "establish an Assignment of Claims Account at ServisFirst").

Plaintiff misunderstands its rights under the assignment agreement.  ServisFirst, not Red Hawk or the other subcontractors, was assigned the proceeds of the contract.  The assignment agreement--the only assignment contract mentioned in plaintiff's

---

[11]Plaintiff's filings, in some places, describe the assignment it seeks to enforce in this action as an agreement between GTS and ServisFirst Bank (ServisFirst) and recognized by the government.  See, e.g., Mem. of Law & Resp. to Def.'s Mot. to Dismiss & Alternativ[e]ly Mot. for Summ. J. (plaintiff's Response or Pl.'s Resp.), Dkt. No. 18, at 8 (stating that plaintiff "was the assignee recognized by the government under the Assignment of Claims between GTS and ServisFirst"); Compl. ¶ 17 (stating that "[n]otice of the assignment was duly given to the government").  Elsewhere in its filings, plaintiff states that the government was a party to the assignment.  See, e.g., Pl.'s Resp. 2 (stating that "the Government entered into Assignments"); Compl. 2 (stating that jurisdiction is founded on "an assignment of claim entered into between the United States and GTS" (capitalization omitted)).  Despite this inconsistency, because plaintiff does not describe an assignment agreement executed by the government, the court understands plaintiff to be referring to the assignment contract entered into by GTS and ServisFirst (the assignment agreement), as to which plaintiff alleges that the government granted its assent.

8

Complaint or Response--was executed by GTS in favor of ServisFirst. See id. ¶¶ 7-9; Pl.'s Resp. 5-6; Def.'s App'x 202-03 (assignment agreement). The assignment agreement states that GTS "sells, assigns and transfers to ServisFirst . . . all monies due or to become due to the assignor from the [government] under [the contract]," but makes no mention of Red Hawk or the other subcontractors as additional assignees. Def.'s App'x 202 (assignment agreement). Red Hawk did not sign the assignment agreement and could not have done so because it was not incorporated until five months later. Compare id. at 203 (assignment agreement) (bearing a date of April 2, 2009), with id. at 208-10 (Red Hawk Articles of Incorporation) (bearing a date of September 25, 2009). Red Hawk does not allege that ServisFirst subsequently re-assigned its right to payment under the contract to Red Hawk. Red Hawk's view that it was assigned the right to the proceeds of the contract, see Pl.'s Resp. 8; Compl. ¶ 16, is therefore incorrect.

Because subcontractors are not in privity of contract with the government, Red Hawk's position as a subcontractor to GTS does not alone bring Red Hawk's claims within the court's jurisdiction. Cf. Erickson, 731 F.2d at 813. The court has jurisdiction to hear the claims of assignees "except as barred by . . . the Anti-Assignment Act," Ins. Co. of the W., 243 F.3d at 1375, and Red Hawk alleges that it is "an assignee of the proceeds of a government contract," Compl. ¶ 16; see also Pl.'s Resp. 8 (stating that Red Hawk "was the assignee"). However, this is a conclusion of law based on Red Hawk's interpretation of the assignment agreement. Although factual allegations are taken as true, see, e.g., Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (finding the plaintiff's allegation "that an express and, in the alternative, an implied-in-fact contract underlies its claim . . . suffices to confer subject matter jurisdiction"), unsupported conclusions of law may be disregarded by the court, 5C Federal Practice & Procedure § 1363 ("Unsupported conclusions of law can be disregarded in determining the motions set forth in Rule 12(b) . . . ."). The undisputed facts clearly establish that ServisFirst, not Red Hawk, is the sole assignee of the right to payment under the contract.

That, as plaintiff claims, the assignment "was entered into . . . for the direct and specific benefit of the subcontractors," Compl. 2, to "[e]nsure payment directly to the subcontractors without GTS interference," id. ¶ 8, does not change the court's analysis. The unambiguous language of the assignment agreement lists ServisFirst as the sole assignee, see Def.'s App'x 202 (assignment agreement) (stating that GTS "sells, assigns and transfers to ServisFirst . . . all monies due or to become due to the assignor from the [government] under [the contract]"), and the creation of such an assignment to ServisFirst is consistent with the alleged intention to ensure payment to the subcontractors by avoiding interference by GTS, cf. Compl. 2, ¶ 8. As plaintiff alleges, the assignment to ServisFirst allowed work to proceed on the contract with the government's contracting officers reviewing invoices submitted by the subcontractors and directing ServisFirst to disburse payments to the subcontractors. See id. ¶ 8.

Defendant interprets plaintiff to be contending "that there was an implied-in-fact agreement that the sub-contractors were to be third-party assignees," a contention defendant describes as a "novel claim . . . unsupported by any cited case law." Def.'s Reply 4. This contention, if it represents plaintiff's view, has not properly been raised and is not before the court.[12] The term "third-party assignee" does not appear in plaintiff's Complaint or Response. The word "implied" is not used in plaintiff's Response and appears in plaintiff's Complaint only once: in plaintiff's statement that plaintiff does not "make any claim arising under an implied . . . contract" with the government. Compl. 2. Plaintiff cites no authority related to the creation of implied contracts or the designation of third-party assignees.

Defendant is correct that "'[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract.'" Def.'s Reply 6 (quoting Atlas Corp. v. United States (Atlas), 895 F.2d 745, 754-55 (Fed. Cir. 1990) (alteration in original)). In this case, the assignment agreement between GTS and ServisFirst describes only ServisFirst as an assignee. See Def.'s App'x 202-03 (assignment agreement) (assigning GTS's right to payment under the contract to ServisFirst). The contract between GTS and the government was amended to reflect the assignment to ServisFirst by providing that all payments would be made to ServisFirst. See id. at 166-67 (Apr. 16, 2009 modification) (modifying the contract to reflect the assignment to ServisFirst). Consequently, even if plaintiff had properly raised the implied contract argument, such an implied contract would be precluded by the express terms of the written contracts addressing assignment. Cf. Atlas, 895 F.2d at 754-55; Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) ("[A]n 'implied-in-fact contract cannot exist if an express contract already covers the same subject matter.'" (quoting Trauma Serv. Grp., 104 F.3d at 1326)).

For the foregoing reasons, court agrees with defendant that plaintiff was not assigned the right to the proceeds of the contract. Taking plaintiff's allegations as true and construing them in the light most favorable to plaintiff, see Cedars-Sinai, 11 F.3d at 1583, the court concludes that plaintiff has failed to meet its burden of alleging "the facts essential to show jurisdiction," McNutt, 298 U.S. at 189.

B.      Any Assignment to Plaintiff Would Have Been Invalid

---

[12]Although the proper interpretation of plaintiff's Response is not without doubt, it is the view of the court that, instead of contending in its Response that Red Hawk was a third-party assignee, plaintiff's Response is addressing defendant's argument that any assignment to Red Hawk would have been invalid with an attempt to prove that the government assented to the assignment. See infra Part III.B (describing defendant's argument that any assignment to Red Hawk would have been invalid and plaintiff's apparent response that the government assented to assignment).

10

Defendant contends that under the Anti-Assignment Acts, no valid assignment could have been made to Red Hawk. See Def.'s Mot. 9-10. Specifically, defendant argues that, with an exception not applicable here, the Anti-Assignment Acts prohibit assignment to more than one party and do not allow subsequent assignments by the assignee. Id. at 10. Therefore, defendant contends, because assignment was made to ServisFirst, no simultaneous assignment (or subsequent re-assignment) properly could have been made to Red Hawk.[13] See id. at 9-10.

Plaintiff does not dispute that an assignment to Red Hawk would not have met the requirements of the Anti-Assignment Acts.[14] Instead, plaintiff appears to respond that

--------

[13]Defendant also contends that an assignment to Red Hawk would be barred by the terms of GTS's contract with the government (the contract). As defendant notes, the contract incorporates by reference clause 52.232-23 of the Federal Acquisition Regulation (FAR), which "provides that a contractor may assign 'its right to be paid amounts due or to become due as a result of the performance of the contract to a bank, trust company, or other financing institution, including any Federal lending agency.'" Def.'s Mot. 10 (quoting 48 C.F.R. § 52.232-23(a) (2012)); cf. Def.'s App'x 46 (contract) (incorporating by reference 48 C.F.R. § 52.232-23). Defendant notes that "Red Hawk . . . is not a 'bank, trust company, or other financing institution,' and thus could not be assigned the right to future payments pursuant to the express terms of the contract and FAR clause 52.232-23." Def.'s Mot. 10. Plaintiff does not argue otherwise.

[14]Specifically, under the Contracts Act, an attempt to transfer a government contract or an interest in a government contract annuls the contract unless the assignment is to "a bank, trust company, Federal lending agency, or other financing institution." 41 U.S.C.A. § 6305(a), (b)(1) (West 2013). Such an assignment "may not be made to more than one party or be subject to further assignment." Id. § 6305(b)(5). Because Red Hawk is a subcontractor, not a bank, trust company, federal lending agency or other financing institution, an attempt to assign the contract or any right in the contract to Red Hawk would have annulled the contract. Cf. id. § 6305(a), (b)(1)(3). Because assignment "may not be made to more than one party or be subject to further assignment," id. § 6305(b)(5), Red Hawk could not have been assigned the right to payment under the contract by the assignment agreement between GTS and ServisFirst, and ServisFirst could not have subsequently assigned any portion of its right to the proceeds of the contract to Red Hawk.

Similarly, under the Claims Act, unless assignment is made to a financing institution, a number of requirements must be met. The "assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b) The assignment must "specify the warrant, must be made freely, and must be attested to by 2 witnesses." Id. "The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment." Id. It is apparent from plaintiff's complaint that no assignment agreement meeting these requirements and naming Red Hawk as an assignee of the proceeds of the contract exists. If assignment is made to a financing institution, the Claims Act requires--unless the contract expressly provides otherwise and with an exception not applicable here--that the assignment

11

the government waived the protection of the Anti-Assignment Acts by assenting to an assignment to Red Hawk. Plaintiff states that in this case, the "[t]he establishment of an Assignment of Claims Act payment directly to subcontractors was a condition precedent to . . . [the] reinstatement of" the task order, Pl.'s Resp. 5, and that the government "engaged in a pattern and practice of directing subcontract payments specifically to subcontractors," id. at 2; cf. id. at 4, 8 (citing Tuftco, 222 Ct. Cl. at 285-86, 614 F.2d at 745, as support for the proposition that the government assented to an assignment to Red Hawk). Plaintiff further states, without elaboration, that there was a "meeting of the minds between" Ms. Maack and the president of GTS. Id. at 5.

To the extent that plaintiff argues that the government waived the protection of the Anti-Assignment Acts, plaintiff's argument is without merit. To waive the protection of the Anti-Assignment Acts, the contracting officer must give "clear assent to the assignment." D&H, 102 F.3d at 546. To determine whether the contracting officer has done so, courts examine whether "the totality of the circumstances presented to the court establish[] the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments." Tuftco, 222 Ct. Cl. at 287, 614 F.2d at 746.

Unlike the contracting officer's actions in Tuftco, the contracting officers' actions in this case do not demonstrate clear assent to an assignment to Red Hawk. Tuftco concerned the assignment of two government contracts for the delivery of mobile homes for flood disaster use. Id. at 279-80, 614 F.2d at 741. After the award of the first contract, the original contractor contacted the assignee to propose that the contract be performed by, and payment made to, the assignee. See id. at 280, 614 F.2d at 741-42. After a discussion during which the contracting officer approved of this arrangement, the original contractor and the assignee executed an assignment agreement and provided notice of the assignment to the contracting officer. See id., 614 F.2d at 742. The mobile homes were delivered and certain of the payments were made to the assignee as planned. Id. at 280-81, 614 F.2d at 742. Other payments, however, were incorrectly made to the original contractor. Id. A second contract was awarded, and again the original contractor and the assignee entered into an assignment. Id. at 281, 614 F.2d at 742. This second assignment required payments to be sent to a law firm, "which would act as a disbursing agent."[15] Id. The contracting officer was informed of the assignment by letter and wrote

must be "made to only one party" and "may not be reassigned." Id. § 3727(c)(2)(B)-(C). Accordingly, any assignment to Red Hawk in GTS's agreement with ServisFirst or made subsequently by ServisFirst would have been barred by the Claims Act.

[15]In this case, although ServisFirst was to disburse funds to GTS and the subcontractors as directed by the government, the assignment agreement made ServisFirst the assignee of the proceeds of the contract, not a disbursing agent for the assignee. See supra Part III.A (finding that ServisFirst, not Red Hawk, was assigned the proceeds of the contract).

at the bottom of the letter "Assignment acknowledged," adding his name and the date. <u>Id.</u> Again, certain of the payments were incorrectly made to the original contractor. <u>Id.</u>

The Court of Claims "emphasize[d]" that the parties to the assignment contacted the contracting officer before each assignment and were advised that, notwithstanding the Anti-Assignment Acts, the government would honor the assignment and make the payments to the assignee or its law firm as agreed. <u>See</u> <u>id.</u> at 282, 614 F.2d at 742. The court noted that the government had accepted the mobile homes delivered by the assignee and made certain of the payments as required by the assignments--both actions that "demonstrated awareness and acknowledgement of the assignments." <u>Id.</u> at 287, 614 F.2d at 746. The court concluded that "the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments." <u>Id.</u>

In this case, because plaintiff does not allege, as a factual matter, that any assignment was made to Red Hawk, <u>see</u> <u>supra</u> Part III.A, there was no assignment for the contracting officers to assent to. Further, in <u>Tuftco</u>, the parties contacted the contracting officer before each assignment and were assured that the assignments would be recognized. <u>Tuftco</u>, 222 Ct. Cl. at 282, 614 F.2d at 742. In this case, plaintiff alleges that "it was important to" Ms. Maack to ensure payment to subcontractors without interference by GTS,[16] <u>see</u> Compl. ¶ 8, but does not allege that Ms. Mack discussed or agreed to recognize an assignment of the proceeds of the contract directly to Red Hawk. In <u>Tuftco</u>, the government "demonstrated awareness and acknowledgement of the assignments" by receiving mobile homes from the assignee and making payments directly to the assignee. <u>Tuftco</u>, 222 Ct. Cl. at 287, 614 F.2d at 746. In this case, plaintiff does not allege that Red Hawk replaced GTS in its role as prime contractor or received payments directly from the government. To the contrary, plaintiff alleges that Red Hawk continued its work as a subcontractor and that the government made payments to ServisFirst rather than Red Hawk. <u>See</u> Compl. ¶ 10; <u>see also</u> Pl.'s Resp. 6 (stating that, until the contract was terminated for default, ServisFirst, rather than the government, made payments to the subcontractors). Neither does plaintiff allege that the contracting officers wrote "Assignment acknowledged" or a similar statement on a document providing notice of an assignment to Red Hawk. <u>Cf.</u> <u>Tuftco</u>, 222 Ct. Cl. at 281, 614 F.2d at 742.

Accordingly, as plaintiff does not dispute, the assignment to Red Hawk of a portion of the proceeds of the contract would not have fallen within the terms of the Anti-Assignment Acts. Having examined the totality of the circumstances described by plaintiff, <u>cf.</u> <u>Tuftco</u>, 222 Ct. Cl. at 287, 614 F.2d at 746, the court concludes that, if such

---

[16]Plaintiff states that a similar assurance was made to plaintiff's counsel--apparently during a conversation in which plaintiff's counsel was acting in his capacity as counsel to GTS-- by an attorney for the government, Mr. Charles Williams. <u>See</u> Compl. ¶ 7.

13

an assignment had occurred, the contracting officers did not waive the protection of the Anti-Assignment Acts by demonstrating their "clear assent," cf. D&H, 102 F.3d at 546. Taking plaintiff's allegations as true and construing them in the light most favorable to plaintiff, see Cedars-Sinai, 11 F.3d at 1583, the court therefore concludes that plaintiff has failed to meet its burden of alleging "the facts essential to show jurisdiction," McNutt, 298 U.S. at 189.

      C.      Defendant's Alternative Motion for Summary Judgment and the Related Motions Are Moot

An assignee of the proceeds of a government contract is not in privity of contract with the government. See Produce Factors, 199 Ct. Cl. at 580, 467 F.2d at 1348. Accordingly, such an assignee may sue to recover funds wrongly paid to another, D&H, 102 F.3d at 547; Thomas Funding, 15 Cl. Ct. at 502, but may not sue to recover funds not paid by the government, Thomas Funding, 15 Cl. Ct. at 502 (citing Produce Factors, 199 Ct. Cl. at 580, 467 F.2d at 1348).

Defendant contends that no wrongful payment was made to GTS and that what may appear from the government's records to be a payment to GTS was instead "part of an administrative action designed to correct previous payments made from the wrong contract line item numbers."[17] Def.'s Mot. 12. Accordingly, defendant contends, "Red Hawk cannot demonstrate that it was injured[] and would lack standing to bring this action." Id. at 11. Defendant therefore requests that the court dismiss plaintiff's complaint for lack of subject matter jurisdiction or enter summary judgment in favor of defendant. Id.

---

[17]Defendant contends that plaintiff admits no actual payment to GTS took place. See Def.'s Mot. 11 ("Red Hawk, however, does not allege that this $1,634,412.63 entry represents an actual payment to GTS."); Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Dkt. No. 26, at 7-8 ("Red Hawk expressly admits that '[n]o actual payment was made.'" (quoting Pl.'s Resp. 6) (alteration in original)). Plaintiff's Complaint and plaintiff's Response appear at times to contradict themselves on this point, but the court does not view either filing as conceding that no actual payment was made to GTS. Compare Pl.'s Compl. ¶¶ 12, 19, p. 8 (expressly stating that the government made a wrongful payment to GTS), and Pl.'s Resp. 7 ("It is apparent that a check was issued and collected . . . ."), with Compl. ¶¶ 12-13 (stating that what appears from the government's records to be a payment to GTS was actually "a subterfuge" and "an improvident attempt to reprogram money from the GTS contract without the knowledge of the prime contractor or its subcontractors"), and Pl.'s Resp. 6 ("No actual payment was made."). Additionally, plaintiff acknowledges that, "due to [a] lack of contractual privity with the government, an assignee may not bring an action for breach of contract" but instead "may only sue the government to recover withheld funds . . . wrongly paid out to a third party." Pl.'s Resp. 7 (citing Thomas Funding Corp. v. United States, 15 Cl. Ct. 495, 502 (1988)).

14

Unlike defendant's assertion that the court lacks jurisdiction because plaintiff is not an assignee of the proceeds of the contract, see supra Part III.A-B, defendant's assertion that there was no payment to GTS contradicts a factual allegation in the Complaint, see Compl. ¶ 12 (stating that, on February 9, 2011, Mr. Burgess wrongfully issued a progress payment in the amount of $1,634,412.63 directly to GTS, notwithstanding the assignment to ServisFirst); id. ¶ 19 (stating that Red Hawk is entitled to recover funds "wrongfully paid out to the prime contractor in violation of the Assignment"); id. at 8 (stating that Red Hawk seeks to recover "money wrongfully paid to the prime contractor in violation of the assignment" (capitalization omitted)).

Plaintiff claims that, because no discovery has yet taken place, plaintiff is unable to respond to this portion of defendant's Motion. See Pl.'s Resp. 8 ("As to the alternative motion for summary judgment[,] the plaintiff has had no discovery in the case. Without discovery, Plaintiff is without means to defend on the summary judgment and has filed herewith a . . . motion for discovery." (capitalization omitted)). By a separate motion, plaintiff moved for discovery.[18] See generally Pl.'s Mot. Disc. Without citation to authority, plaintiff stated that "[n]o discovery has taken place and Plaintiff is in need of [d]iscovery on issues related to Defendant's documents and assertions." Id. at 1. Plaintiff requested discovery "so that counsel may discover evidence that may be admissible to defend against Defendant's Motion for Summary Judgment." Id. at 2. Plaintiff then filed another motion, requesting that the court stay summary judgment, for similar reasons, to allow plaintiff to undertake discovery.[19] See Pl.'s Mot. Stay 1.

The court understands plaintiff to be making two arguments. First, plaintiff appears to argue that, to the extent that defendant's motion is a factual challenge under Rule 12(b)(1) of the RCFC to the allegation in plaintiff's Complaint that payment was wrongfully made to GTS instead of Red Hawk, plaintiff should be allowed discovery regarding this contested jurisdictional fact. Cf. Barrett v. Nicholson, 466 F.3d 1038, 1042-43 (Fed. Cir. 2006) ("[T]he general rule is that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are

---

[18]By an additional motion, plaintiff requested that the court strike the documents in defendant's Appendix. See Mot. to Strike (plaintiff's Motion to Strike), Dkt. No. 19, at 1. In a subsequent filing, plaintiff stated that it "hereby withdraws" its Motion to Strike. See Pl.'s [] Mot. to Stay Summ. J. (plaintiff's Motion to Stay or Pl.'s Mot. Stay), Dkt. No. 31, at 1. The court finds plaintiff's Motion to Strike MOOT.

[19]In support of its Motion to Stay, plaintiff cites Rule 56(f)(2) of the RCFC. See Pl.'s Mot. Stay 1. In the current edition of the RCFC, Rule 56(f)(2) provides that the court may, after giving notice and an opportunity to respond, grant a motion for summary judgment on grounds not raised by a party. See RCFC 56(f). The court understands plaintiff to be relying on a previous version of this rule, which provided that, if a party demonstrates that "it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may order a continuance to allow the party to undertake discovery. See RCFC 56(f) (2010).

peculiarly within the knowledge of the opposing party" (internal quotation marks omitted)). Second, plaintiff appears to argue that, to the extent defendant requests summary judgment on the ground that no wrongful payment to GTS took place, plaintiff "cannot present facts essential to justify its opposition," see RCFC 56(d), and that the court should permit relevant discovery.[20]

On November 1, 2012 and again on November 28, 2012, the court advised the parties that it would address plaintiff's motions after deciding defendant's motion to dismiss. Order of Nov. 1, 2012, Dkt. No. 21; Order of Nov. 28, 2012, at 1-2. Because the court has determined that it lacks jurisdiction over plaintiff's claims, see supra Part III.A-B, it is unnecessary to resolve the factual dispute regarding payment to GTS. The court therefore finds defendant's Motion MOOT insofar as defendant requests dismissal and summary judgment on the ground that no payment was made to GTS. The court also finds plaintiff's Motion for Discovery and Motion to Stay MOOT.

IV.    Conclusion

Plaintiff seeks to recover under an assignment agreement to which plaintiff was not a party and which does not assign plaintiff the right to receive the proceeds of the contract. See supra Part III.A. The court concludes that plaintiff is not an assignee under the assignment agreement. See id. Additionally, any assignment to plaintiff would not have met the requirements of the Anti-Assignment Acts, the requirements of which were not waived by defendant. See supra Part III.B. Plaintiff is therefore not in privity of contract with the government, and the court is without subject matter jurisdiction to hear plaintiff's claims.

---

[20]In a reply brief, plaintiff states that discovery is necessary to allow plaintiff to explore a number of factual issues unrelated to whether the government made a wrongful payment to GTS, such as the government's rejection of GTS's invoices and the credibility of Mr. Jeffrey Burgess as a potential trial witness. See Pl.'s Reply to Def.'s Resp. to Mot. for Disc., Dkt. No. 32, at 1-2. To the extent that plaintiff is arguing that discovery is necessary before the court addresses defendant's facial challenge to plaintiff's Complaint, plaintiff's arguments were raised for the first time in a reply brief, and the court finds them to be waived. Cf. Becton Dickinson & Co., v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) ("[W]e see no reason to depart from the sound practice that an issue not raised by an appellant in its opening brief . . . is waived."). Additionally, the court finds discovery unnecessary before addressing defendant's facial challenge to plaintiff's Complaint because plaintiff's allegations, taken as true, do not provide the court with jurisdiction over plaintiff's claims. See supra Part III.A-B. Plaintiff is therefore not entitled to discovery in order to substantiate its allegations. Cf. Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (stating that the district court did not err by denying discovery before ruling on a motion under Rule 12(b)(1) because the plaintiff "has made no allegation which, if substantiated, would establish standing to sue").

Insofar as defendant requests that the court determine under Rule 12(b)(1) or Rule 56 that no wrongful payment was made to GTS, defendant's Motion is MOOT-IN-PART. Plaintiff's Motion to Strike, Motion for Discovery and Motion to Stay are MOOT.

Insofar as defendant's Motion requests that the court dismiss plaintiff's Complaint for lack of jurisdiction because plaintiff is not, and could not have been, an assignee of the right to the proceeds of the contract, defendant's Motion is GRANTED-IN-PART. The Clerk of Court shall ENTER JUDGMENT, dismissing plaintiff's Complaint.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge